### INHABITANTS OF WOBURN *vs.* RICHARD W. HENSHAW.

The grantee of the exclusive right to use the water in a canal, whose deed binds him to bear the expense of the repairs of the canal and who has repaired a bridge which was built by his grantor to carry an existing highway over it, may be found by a jury to have taken upon himself the duty of maintaining the bridge, and therefore be liable to the town where the highway lies, for the amount of a judgment recovered against the town in a suit for injuries caused to travellers on the highway by his neglect to keep the bridge in repair.

Parol evidence that a road was known as "a highway" and used as "a common county road" for many years before a canal was dug across it, is sufficient to warrant a finding that it was or became a highway before the construction of the canal, though there is no record of the laying out of the road as a highway.

A party in possession of a mill upon a canal, and claiming title under a deed which was made to him under order of court and binds him to repair the canal, cannot excuse himself from the liability to repair, upon the ground that the order of court was defective and the deed therefore passed no title.

A party who offers himself as a witness at a trial cannot refuse to answer questions as to a conversation with his counsel, on the ground that it was a privileged communication.

TORT to recover the amount of damages recovered against the plaintiffs by Calvin C. Bingham, in a suit for injuries received

by him on June 6, 1866, by reason of a defect in a bridge which crossed a canal and formed part of a highway, called Central Street, in Woburn.   At the trial, before *Foster*, J., the material facts appeared as follows :

Bingham, travelling on the highway, was injured by being thrown from his carriage by reason of a defect in the bridge; sued the plaintiffs, and recovered $6500 damages.   The defendant had notice of the pendency of the suit, and was requested to assume the defence thereof, but did not do so.   The plaintiffs, in the present action, contended that the canal was made after the highway had been laid out, and that the defendant was bound to keep the bridge in repair.

On the question of the priority of the highway to the canal, the evidence was as follows : One witness, who had been a selectman of the town, testified that he had lived in Woburn since 1827, and known Central Street as a highway for more than forty years ; that the canal was dug in 1833 or 1835 by the Woburn Agricultural Company, and the bridge must have been built when the canal was dug; that he knew the season when the bridge was built; and that it was built under the direction of the company.   On cross-examination he said that he only knew from hearsay who built the bridge, but that he knew of its being built and since then being used as part of the road; that there were no records of the laying out of Central Street; that he had only known the road since 1827; and that there was no great amount of travel over it when he first knew it.   Another witness testified that he was fifty-five years old, and had known the way ever since he could remember anything, and as a common county road ; that the ground was broken for the canal on August 30, 1836; that he had no particular recollection about the bridge, but that the canal was dug before cold weather, and undoubtedly the bridge was built in the fall of 1836.

The defendant was in possession of a mill on the canal about a third of a mile from the bridge, but did not own the land adjoining the bridge, nor the fee in the canal.   The mill was conveyed on October 22, 1838, by the Woburn Agricultura

Company to Samuel Sweetser, by a quitclaim deed containing a provision that the grantee, his heirs and assigns, should be entitled to the first draught of water from the canal for the use of the mill " equal to a six horse power on a common fifteen foot breast wheel," and should be " subject to one third of the expense of any repairs that may be necessary on the canal." Sweetser conveyed the mill to William C. Choate, his assignee in bankruptcy, who gave a deed thereof to Jacob Richardson. This deed purported to be given in pursuance of an order of court made under the United States bankrupt act of 1841; but in the order of court no time and place of sale were fixed, and the blanks for fixing them were left unfilled. Richardson conveyed his title to the defendant by a quitclaim deed containing the same provision, as to the use of the water and the repairs of the canal, which was contained in the deed from the Woburn Agricultural Company to Sweetser.

On the same 22d of October 1838, the Woburn Agricultural Company conveyed a lot of land bordering on the canal, with another mill thereon, to John Bigelow, by deed containing a provision that the mill was entitled " to all the water flowing through the canal" except that reserved for the mill sold to Sweetser, and that the proprietors of the premises should bear " the proportion of two thirds in all necessary repairs upon the canal." Bigelow conveyed the premises to Stephen M. Allen, and Allen by deed released to the defendant all his right to draw and use water from the canal.

The plaintiffs offered evidence tending to show that repairs were made on the bridge under the direction of Thomas Henshaw, the defendant's son, both before and after the accident. The defendant objected to all this evidence, and particularly to to any evidence as to repairs after the accident, but it was admitted.

The defendant also introduced evidence as to the repairing of the bridge, and it appeared from the cross-examination of his witnesses that Thomas Henshaw was a member of the defendant's firm and had charge of the mill; that he made repairs on the canal, and that on the day after the accident he repaired the

bridge. The defendant himself testified that he never repaired the bridge before the accident, nor ever agreed to repair it or authorized any one to repair it; that the repairs on the bridge after the accident were made without his authority; and on cross-examination he stated that he never personally had anything to do with the repairs of the canal, and that his son Thomas repaired the canal and had general charge of the water power. He further testified that he was the sole owner of the mill, which he leased to his firm, and that there was an understanding, though no written agreement, between himself and his partners, that he should bear the expense of repairing the canal.

On the cross-examination of the defendant, he objected to being compelled to state conversations with his counsel as to the suit by Bingham against the plaintiffs, on the ground that they were privileged communications; but the court overruled the objection.

The defendant requested the court to rule that there was no evidence that the highway was laid out before the canal was made ; that the defendant was not bound to repair the bridge unless by virtue of express agreement with the town; that the defendant's deeds did not require him to repair the bridge ; that the deed from Choate passed no valid title, and therefore the clause therein as to repairs did not bind the defendant; that any repairs made on the bridge would not create the obligation claimed by the plaintiffs; that there was no sufficient evidence that Thomas Henshaw was a general agent; and that the plaintiffs, being *in pari delicto,* could not recover.

The judge instructed the jury that the plaintiffs must satisfy them that the highway preceded the digging of the canal; that if the owner of a mill estate digs a canal across a previously existing highway, and builds a bridge over it, he is bound to keep the bridge in reasonable repair, and if he is negligent in the performance of the duty a party injured by reason of such negligence has his action for damages against him ; and that, if the injuries are sustained under such circumstances that the town is also liable, and the injured party sees fit to elect to sue the town, the inhabitants of the town, by giving notice to the

Inhabitants of Woburn *v* Henshaw.

person who erected and is maintaining the bridge to come in and defend the action, can afterwards call upon him to indemnify them for what they have had to pay in damages and costs.

He further instructed them that neither the mere ownership of the mill by the defendant, nor the mere transmission of the title to him, nor the mere use of the water running through the canal, nor the mere keeping in repair of the canal and its banks and the sluiceways, would subject the defendant to a legal liability to maintain the bridge; but that if the defendant took upon himself the possession and use of the canal, and of the bridge as part of it, and maintained and repaired the bridge, either personally or by his agent, then he affirmed the structure, and succeeded to the liability of the parties who put it there; that he was not bound by the acts of any of those who preceded him in the estate, nor was there any deed which rendered him bound to make repairs on the bridge; that his liability depended upon the question, whether he took upon himself the maintenance of the bridge by repairing it; and that, if the jury should find that he did repair this bridge before the date of the accident, that was evidence upon which they might infer that he did maintain it; that evidence of repairs made after the accident would not alone establish the liability of the defendant, but was to be considered in connection with the other evidence as to previous repairs, and the jury must be satisfied that, after he acquired title, and before the date of the accident, the defendant made repairs; and that, if Thomas Henshaw was the general agent of the defendant for the purpose of taking charge of the real estate and making repairs upon it and the canal, then the acts done by him were to be treated as the acts of the defendant.

He further ruled that knowledge by the plaintiffs of the bad condition of the bridge, and their neglect to repair it, would not prevent them from recovering.

The judge also directed the jury to answer the six following questions : Was the bridge built by the owners of the mills ? At the time when it was built, was the highway which the canal traverses already in existence as a public way ? Did the defend-

ant, after he purchased the estate, occupy and repair the canal? Did he, after his purchase, make the repairs on the bridge before the date of the accident? Was the defendant negligent in regard to repairing the bridge so as to make it reasonably safe? Was the unsafe condition of the bridge the sole cause of the injury to Bingham?

The jury returned a verdict for the plaintiffs, and answered all the questions in the affirmative; and the case was reported for the revision of the full court.

*A. A. Ranney,* (*W. P. Harding* with him,) for the defendant.

*T. H. Sweetser & W. S. Gardner,* for the plaintiffs.

AMES, J.    The only matter that seems to be in controversy between these parties is the question whether the defendant was the person bound by law to keep the bridge in repair. It is established by the verdict that its decayed and unsafe condition was the sole cause of the accident.

The jury have found, under instructions which appear to have been correct, that the highway was of earlier date than the canal.    The owner of the soil traversed by the highway had a right to construct a watercourse across it, subject to the limitation that in so doing he was bound at his own expense to make and keep in repair a way over the watercourse for the convenience of the public; in other words, to construct and maintain a suitable bridge.    This familiar and well settled rule of law does not in our opinion grow out of the feudal tenure, or of any peculiarity in the laws of England in relation to the duties of parishes, as argued by the defendant's counsel, but results, as we think, from the fact that the public right is a mere easement, and the owner of the soil, as such, can lawfully do anything upon it that does not interfere with the public easement. *Perley* v. *Chandler,* 6 Mass. 454.    *Adams* v. *Emerson,* 6 Pick. 57.

The canal was constructed to furnish water power for the mills, which at the time of the accident belonged to the defendant. He was not the owner of the soil under and adjoining t e highway, or the canal, in the vicinity of the bridge, which the case finds was about a third of a mile from the mills.    The owners of the land through which the canal flowed had sold lots

of land to various purchasers at the place where the water power was to be applied, and in the deeds of conveyance had defined the proportions in which the grantees were to enjoy the use of the water, and also the proportions in which the expense of the necessary repairs upon the canal was to be divided between them. When all these various titles to the mill property met and were united in the defendant, he held the whole subject to the express obligation that he should pay for all necessary repairs upon the canal. It was manifestly and visibly an appendage of the mills, and the jury have found that he occupied and used it, and kept it in repair. Substantially it was his canal. The owners of the soil over which it flowed had no right to obstruct or divert the water. The easement, if it should be so considered, was exclusively his, and it was his use and occupation of the canal which created the necessity for maintaining the bridge and keeping it in good condition. If he occupied and used the canal, he also occupied that portion of the highway which was traversed by it, and apparently became subject to the same liability as if he were the original owner of the canal, and builder of the bridge at that point. *Perley* v. *Chandler,* 6 Mass. 454. *Lowell* v. *Spaulding,* 4 Cush. 277. *Milford* v. *Holbrook,* 9 Allen, 18.

But however this may be, the title deeds under which the defendant holds his property in the mills make him chargeable with the expense of keeping the canal in repair, and it would be a very narrow and literal construction of the language to say that this stipulation applies only to the sides and bottom of the canal, or means only that the water is to be confined to its proper channel. It includes more properly all parts of the canal, and everything that is indispensable to its beneficial use. The bridge is substantially a part of the canal, and without it the canal would be an encroachment on public rights and liable as such to be filled up. The deeds do not in terms say that he shall personally make the repairs, but merely that they shall be at his expense. The jury find that after his purchase he made the repairs on the bridge, and they were rightfully instructed that, if he did so, it was sufficient evidence that he was

maintaining it. Why was it not a practical construction of the deeds under which he holds his title, and an undertaking to do personally what if done by others would still be at his expense? There was evidence before the jury upon which in our judgment they were authorized to find that the defendant's son was his general agent, and acting with his sanction in taking charge of the real estate and making repairs upon it and the canal.

The special findings of the jury, which were rendered under instructions sufficiently favorable to the defendant, fully justify the conclusion that the defendant had assumed the support of the bridge and was the party bound by law to keep it in repair. Gen. Sts. c. 44, § 26. *Commonwealth* v. *Deerfield,* 6 Allen, 455, and 2 Inst. 700, there cited. The fact that he occupied the canal, and in so doing occupied that portion of the highway which was crossed by it, together with the express language of his title deeds, taken in connection with the fact of actual repairs upon the bridge by his authority, is quite sufficient to fasten upon him the legal liability, unless explained or rebutted.

The alleged defect in one of the defendant's title deeds (from Choate's assignee) is not material, in this case. Even if the deed should ultimately prove wholly invalid, it is enough for the purposes of this trial that the defendant is in possession, claiming title, and to all appearance actually seised, controlling the property, and treating it as his own, without objection or adverse claim from any quarter.

The objection that the defendant was wrongfully compelled to undergo a cross-examination as to what he said to his counsel cannot be sustained. The policy of the law will not allow the counsel himself to make disclosures of confidential communications from his client; but if the client sees fit to be a witness, he makes himself liable to full cross-examination like any other witness. This is true even as to defendants in criminal cases. *Commonwealth* v. *Mullen,* 97 Mass. 545.

*Judgment on the verdict.*