In re BENDHEIM.

(District Court, S. D. New York. July 16, 1910.)

1. BANKRUPTCY (§ 242*)—PRIVILEGE—PROBABILITY OF DAMAGE.
    In order to entitle a bankrupt to claim his privilege to refuse to tes-
tify on the ground of danger of self-incrimination, there must be some-
thing which gives rise to a probability of damage on which a doubt may
be based.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 400; Dec.
Dig. § 242.*]

2. WITNESSES (§ 305*)—OBJECTIONS—USE OF EVIDENCE RECEIVED.
    Testimony objected to, although privileged, may be used for all pur-
poses when once brought out.

    [Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 305.*]

3. BANKRUPTCY (§ 242*)—PRIVILEGE—WAIVER—INCRIMINATING STATEMENT.
    Where a bankrupt had volunteered on a disclosure of what was in his
shop on January 1, 1910, he waived his privilege to refuse to testify fully
on such subject on the theory that his testimony might incriminate him
by reason of a financial statement previously made in the fall of 1908.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 242.*]

4. BANKRUPTCY (§ 242*)—PRIVILEGE—EXERCISE.
    Where a bankrupt testified partially as to his real estate holdings be-
ginning with the year 1909, he was not entitled to protection from testi-
fying further in that regard on the ground that his testimony might in-
criminate him by reason of a prior financial statement, in the absence of
a showing of some of the details to indicate that he would be incrim-
inated.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 242.*]

5. BANKRUPTCY (§ 242*)—PRIVILEGE—WAIVER.
    Where a bankrupt voluntarily commenced to testify with reference to
his ownership of real estate during the year prior to bankruptcy, he waiv-
ed his privilege to refuse to testify on the ground that his testimony
might incriminate him, and was required to make a full disclosure.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 242.*]

In the matter of Bertold Bendheim, bankrupt. On certificate to
review the question of the bankrupt's obligation to answer questions
in his examination. Objections overruled.

Jellenik & Stern, for trustee.
Oppenheimer & Arnold, for bankrupt.

HAND, District Judge. Undoubtedly it is always a difficult thing
to say at just what point a bankrupt who is compelled to answer,
and who claims his privilege, should be allowed the exercise of his own
unquestioned judgment of the danger of self-incrimination. A priori
no question can be said to be outside of the range of proof of some
crime, and to allow him to stand mute in all cases is to give him the
privilege of keeping silent as to all his affairs, in the interest of merely
pedantic and verbal integrity of principle. While in all cases he
must be given the benefit of all doubts, there must be something

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which gives rise to a probability of damage upon which a doubt may be based. Queen v. Boyes, 1 B. & S. 311, 321.

Here there are two questions which have been certified. The first is as to the amount and character of his stock of goods. He had been a saloon keeper, and the question arose as to what he had had in his shop in January, 1910. The second question is as to whether he had owned any real estate since December, 1908. There is a third question which relates to the making of certain financial statements by him; but, as he answered the only questions that were asked him, any ruling upon them has become academic. It is true that his counsel excepted to the referee's ruling; but nothing is better settled than that the testimony, although privileged, may be used for all purposes, when once it is brought out. Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575.

Therefore the questions remaining are the first two that I mention. The bankrupt's theory is that his financial statements, which undoubtedly show the amount of property which he had, might tend to incriminate him when coupled with subsequent proof of what property he actually had. So far as concerns the stock of merchandise, he testified that his last statement was in the fall of 1908, and the questions regarding his stock of mechandise refer to the period before he went to the hospital, and that was on the 6th or 8th of January, 1910. The inquiry was, therefore, of a period long subsequent to the last statement which he made. Of course, the evidence woud have some bearing upon the condition of his stock at the time of the statement; but he has nowhere suggested that he fears or believes that a disclosure of his stock on hand on the 1st of January would show any contradiction with any written statement which· he made; but, in the absence of some claim on his part coupled with some proof of reasonable expectation that that claim has a basis, his danger is in my judgment purely academic. Moreover, I should hold that, having volunteered upon a disclosure of what was in his shop at that time, he had waived his privilege, for it is well settled that, having once embarked upon such a disclosure, he has waived his privilege and cannot thereafter stop halfway. The waiver in this case even went so far as to include an answer on page 138 to the very question which he subsequently refused to answer. The testimony was as follows:

"Q. And how many cases did you have? A. Had 30, 40 cases. Q. What else? A. Had some imported good, imported liqueurs."

There follow some six pages of testimony as to the amount of liquors which he had on hand, and then the question was repeated, "Q. What else?" which he refused to answer. I hold that he must answer fully as to the stock of merchandise which he had on hand at the beginning of January, 1910.

In respect of a disclosure of his real estate the same considerations apply. He was asked about his holdings beginning with the year 1909, a period some time, though not so long, after his last financial statement, and he does not swear in regard to this that he believes his testimony might contradict his written financial statement. He must at least show some details to indicate that he will be incriminated;

before I shall protect him. Moreover, on pages 164 to 167 he testifies quite freely about his own ownership of real estate prior to 1909, and says that the last time he owned any was a couple of years ago. The question which he subsequently refused to answer was only that question in a different form. Having begun to disclose his ownership of real estate and declared that he had none during the period in question, he must continue and must disclose it fully, for he has clearly embarked upon that subject, and by that has waived any privilege in regard to it.

I therefore direct him to answer the questions. If he does not do so, the referee will certify him for contempt.