### STEEN v. FIRST NAT. BANK OF SARCOXIE, MO., et al.

(Circuit Court of Appeals, Eighth Circuit. March 18, 1924. Rehearing Denied May 29, 1924.)

No. 6203.

1. **Exceptions, bill of** &⇒56(4)—**Not invalidated by error of judge in signing.**

   A bill of exceptions, stipulated to be correct by counsel for defendants in error, *held* not invalid because the trial judge, while signing the order for its filing, by mistake omitted to sign the formal certificate of approval.

2. **Witnesses** &⇒219(1)—**Right to prevent disclosure of privileged communications waived, unless personally and timely claimed.**

   The privilege of preventing the disclosure of confidential communications is a personal one, and must be personally and timely claimed when the subject-matter of it is first presented, or the privilege is waived.

3. **Witnesses** &⇒219(1)—**Owner of privilege, who testifies to part of confidential communication, cannot object to testimony of other parties to it.**

   The owner of the privilege of preventing disclosure of confidential communications cannot, aften testifying to or about them, or to or about any substantial part of them, without objection or claiming his privilege, invoke that privilege to prevent other parties to the communications from testifying to them.

4. **Witnesses** &⇒219(1)—**Testifying to confidential communication, though on cross-examination, held to waive privilege.**

   The fact that the testimony of a witness to a confidential communication was given on cross-examination does not deprive it of its efficacy as a waiver of the privilege of excluding the testimony of other parties to

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it, when the cross-examination was legitimate, or when the testimony was given without objection or claim of privilege.

**5. Witnesses ⬅═219(1)—Waiver of privilege not affected by fact that witness testified under oath.**

The effect of the testimony of a privileged witness to a confidential communication as a waiver of privilege is not lessened by the fact that he was under oath or was subpœnaed, since neither debarred him from claiming his privilege.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action at law by Elizabeth Steen against the First National Bank of Sarcoxie, Mo., and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Kelsey Norman, of Joplin, Mo. (James C. Norman, of Joplin, Mo., on the brief), for plaintiff in error.

John H. Flanigan, of Carthage, Mo. (Allen McReynolds, of Carthage, Mo., and Cameron L. Orr, of Kansas City, Mo., on the brief), for defendants in error.

Before SANBORN and KENYON, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. This is an action by Mrs. Elizabeth Steen against the First National Bank of Sarcoxie, a corporation, and W. J. Burns International Detective Agency, a corporation, to recover damages for the defendants' prosecution without probable cause and maliciously of the plaintiff for the alleged crime of feloniously and burglariously entering and stealing from the building of the bank bonds and money worth about $26,000 in the month of January, 1920. The complaint contains averments of facts constituting a good cause of action for such damages. The defendants denied these averments. The case was tried to a jury, and at the close of the trial the court instructed the jury to return a verdict for the defendants, and the plaintiff excepted and has assigned this ruling and rulings rejecting offered evidence as error. In the consideration of this case Mrs. Steen will be called the plaintiff and the corporations the defendants.

The defendants have made a motion to dismiss the writ of error: (1) Because the bill of exceptions was not signed by Judge Van Valkenburgh, who tried the case; and (2) because the bill of exceptions was not filed until February 25, 1922, and the time granted by the court for filing the bill of exceptions expired on February 15, 1922. The second ground of this motion is met by the plaintiff by proof that the trial court on February 11, 1922, made an order extending the time to file the bill of exceptions until March 2, 1922, and by a motion to make a copy of that order a part of the record in this court. That motion is granted.

[1] The first ground of the motion to dismiss rests upon this condition of the bill of exceptions. At the end of the recital of the proceedings at the trial appears the usual form of an approval of the bill of

exceptions, with the dates blank and the place for the signature of the judge blank, just over the words:

"Judge District Court of U. S., Southwestern Division, Western District of Missouri."

Also below this appear the words:

"The above and foregoing bill of exceptions is hereby approved. Griffin & Orr, Attorneys for Defendant William J. Burns International Detective Agency, Inc. McReynolds and McReynolds and John Flanigan, Attorneys for First National Bank of Sarcoxie, Missouri.

"Let the bill be filed and the filing show of record as of this 25th day of February, 1922.                    Arba S. Van Valkenburgh, Judge."

This condition of the bill of exceptions convinces that counsel for the plaintiff prepared it, and submitted it to the counsel for the defendants; that they approved it; that thereafter counsel for the plaintiff either presented it or caused it to be presented to the trial judge; that he intended to allow and certify it in the usual form, but by mistake wrote his name in the last blank for his signature, instead of in the blank at the foot of the usual certificate. He would not have ordered the bill of exceptions filed, if his mind had not assented to its approval, and, as counsel for the defendants stipulated that the bill of exceptions was correct, the mistake of the judge in the placing of his signature ought not to deprive the plaintiff of the benefit of her writ of error. U. S. Compiled Statutes, § 1591. The motion to dismiss the writ of error is therefore denied.

The evidence received at the trial tended to prove that one or more persons broke into the building of the defendant bank in January, 1920, and stole money and securities worth about $26,000; that on October 12, 1920, George W. Crowder, assistant prosecuting attorney, filed a complaint with a justice of peace in Marion township, Jasper county, Mo., wherein he charged that the plaintiff, Mrs. Steen, committed that crime; that upon this complaint the justice issued his warrant for her arrest; that Oll Rogers, the sheriff, arrested her under this warrant at Galena, Kan., October 15, 1920, and took her before the justice; that she pleaded not guilty; that the justice committed her to jail where she remained until October 18, 1920, when she entered into her recognizance for her appearance at her preliminary examination; that at that examination H. B. Boyd, president of the defendant bank, and other witnesses, testified for the prosecution, several witnesses testified for this plaintiff, Mrs. Steen, and the justice found that the offense had been committed, but that the plaintiff, Mrs. Steen, had not been connected therewith; that there was no proof of her guilt and he discharged her.

The record tends to prove that Mr. Boyd, the president, and Mr. Brosius, the vice president, of the defendant bank, acted for and represented the bank in the proceedings which resulted in the filing of the complaint against her, her arrest, and her imprisonment. The plaintiff in her complaint in this action charges, and the defendants deny, that the bank, acting by and through its authorized agents, without probable cause maliciously and falsely informed the assistant prosecuting attorney that she had broken into and stolen the moneys and secu-

rities of the bank; that it urged the prosecuting attorney to issue the warrant; that it agreed to pay all expenses incurred about her arrest, and caused her to be arrested, confined in jail, and to pay large expenses and endure great physical and mental suffering.

After considerable evidence had been introduced at the trial, plaintiff's counsel called as witnesses Mr. Crowder, the assistant prosecuting attorney, and Mr. Rogers, the sheriff, and asked them in substance who had talked to them about the prosecution and making the arrest of the plaintiff, Mrs. Steen, before the complaint against her was filed. Mr. Rogers testified that Mr. Boyd and Mr. Brosius had talked to him about the matter several times and that he made an investigation of the robbery. Before Mr. Crowder could answer the question who talked to him before he instituted the prosecution, counsel for the defendants objected to the introduction of any testimony of either of these witnesses to the statements Mr. Boyd or Mr. Brosius made to the prosecuting attorney or to the sheriff, on the ground that such statements were privileged communications, not susceptible of proof over objections, on the ground that they were made to officers of the state charged with the administration of justice in respect to the criminal law, and that the statements made to the assistant prosecuting attorney were communications between Mr. Boyd and Mr. Brosius and their attorney, and hence privileged upon that ground.

Thereupon counsel for the plaintiff stated that he expected to prove by Mr. Crowder that the defendants in this case presented to him what facts and circumstances they had in their possession bearing upon the guilt or innocence of the plaintiff of the crime charged, and that this witness, George W. Crowder, advised the defendants, and each of them, that the facts detailed to him by the said defendants were not sufficient to constitute probable cause, that they were mere suspicions and surmises, and that he would not undertake the prosecution of this plaintiff upon said charge without the defendants, and each of them, fully and thoroughly understanding that they were, each and every one of them, responsible for any damages that might arise from the prosecution of this plaintiff upon said surmises and suspicions, and that, when he signed the complaint in said case charging this plaintiff with said crime, he did so at the demand of the defendants herein. Counsel for the plaintiff further stated that he expected to prove by the witness Oll Rogers, the sheriff, that he refused to have anything to do with the prosecution of this case and the arrest, obtaining of any testimony, or bringing witnesses before the court, without and unless the defendants, and each of them, would be responsible to him and pay him for any and all costs and expenses incurred by him, and also hold him harmless from any and all damages that might arise by reason of any act of his in and about the arrest of this plaintiff and the prosecution of said case. At the close of this statement the trial court sustained the objections to the admission of the testimony on the authority of Vogel v. Gruaz, 110 U. S. 311, 316, 4 Sup. Ct. 12, 28 L. Ed. 158, and the plaintiff excepted.

Thereupon the plaintiff, for the purpose of proving a waiver of the alleged privilege, presented the witness Mrs. Tom Harrison, and offered

to prove by her that she was present at the preliminary hearing of the plaintiff upon the charge out of which this case arose, and that she heard the testimony of the defendants herein, wherein Jack Searles, representing the Burns International Detective Agency, and wherein H. B. Boyd, president, and George Brosius, vice president, respectively, of the First National Bank of Sarcoxie, each, after being sworn and having testified in chief, on cross-examination testified freely and voluntarily as to what statements they had made to George W. Crowder, assistant prosecuting attorney of Jasper county, Mo., concerning and touching upon the guilt or innocence of this plaintiff of the crime, which it is alleged she had committed, and out of which this action arose. Counsel for the defendants then objected to this evidence on the ground that it was privileged, and that the statements of the witnesses could not be binding on the defendants. The court sustained the objections and the plaintiff excepted. And thereupon, because without the testimony of Mr. Crowder, the assistant prosecuting attorney, Mr. Boyd, or Mr. Brosius, the plaintiff was unable to prove the acts and sayings of the bank and its agents which she alleged caused her arrest and prosecution, the court directed the jury to return a verdict for the defendants and the plaintiff excepted. These rulings present the question of the extent and effect of the waiver by the claimant of the privilege of preventing the disclosure of confidential communications by his prior voluntary disclosures thereof.

For the purpose of simplifying the treatment of this question, Mr. Boyd, the president of the bank, will be treated as its representative and as the witness who made the statements relative to the guilt or innocence of Mrs. Steen to Mr. Crowder, the assistant prosecuting attorney, although the determination of the question here presented may also determine the admissibility of the statements of Mr. Brosius, Mr. Searles, Mr. Crowder, and Mr. Rogers.

For the purpose of the discussion of the question at issue, it is conceded that if, at the preliminary examination of Mrs. Steen, Mr. Boyd, the bank, or the state, when Mr. Boyd was asked to testify to statements to and conversations with Mr. Crowder relative to the guilt or innocence of Mrs. Steen before she was prosecuted, had exercised his or its option to claim and insist upon the privilege of excluding Mr. Boyd's evidence on that subject, on the ground that those statements were confidential communications, it would have been the duty of the justice of the peace to sustain that claim. But Mrs. Steen offered to prove that Mr. Boyd was sworn as a witness for the state, that he testified on direct examination, and that on his cross-examination, without making any claim of privilege to refuse, he voluntarily testified to confidential communications between him and Mr. Crowder. It is also conceded that the claim, when timely made, of the privilege of preventing the disclosure of a confidential communication bars testimony to it by the other party to that communication. The client by such a claim may bar the testimony of his attorney; the patient, the testimony of his physician; the bank, or Mr. Boyd, by a timely claim of its or his privilege might have barred their testimony, or the testimony of Mr. Crowder, to these confidential statements.

[2] But this privilege of preventing the disclosure of confidential communications is a personal one. It is not a right effective without claim or assertion. It is a mere privilege, that has no practical existence or effect, unless personally and timely claimed by its possessor. It must be presented and claimed by the owner when the subject-matter of it is first presented. Silence during testimony disclosing the privileged confidential communication, or any substantial part of it, waives the privilege, and the owner of it cannot, after testifying to material facts regarding the privileged communication, have an objection sustained to the testimony of the other parties thereto, or to the transaction, on the ground that it is privileged.

"The claim of privilege can be made solely by the witness himself; the privilege (as the common phrasing runs) is purely personal to himself. Whether he chooses to fulfill his duty without objection, or whether he prefers to exercise the exemption which the law concedes to him, is a matter resting entirely between himself and the state." 3 Wigmore on Evidence, § 2196 (1), and section 2268; State v. Borstad, 27 N. D. 533, 147 N. W. 380, Ann. Cas. 1916B, 1014; State v. Campbell, 73 Kan. 688, 699, 700, 85 Pac. 784, 9 L. R. A. (N. S.) 533, 9 Ann. Cas. 1203; State v. Broughton, 29 N. C. 96, 100, 101, 45 Am. Dec. 507; Hendrickson v People, 10 N. Y. 13, 27, 29, 61 Am. Dec. 721; State v. Andrews, 82 Vt. 314, 73 Atl. 586, 137 Am. St. Rep. 1008; People v. Gerold, 265 Ill. 448, 107 N. E. 165, 178, Ann. Cas. 1916A, 636.

[3] The owner of the privilege of preventing the disclosure of confidential communications cannot, after testifying to or about them, or to or about any substantial part of them, without claiming his privilege, or objecting to testify on the ground of his privilege, invoke that privilege to prevent other parties to the communications from testifying to them. He cannot by his silence lay down the shield of his privilege, and assail another with the sword of his own testimony to the privileged communications, and, when his adversary essays to defend himself, or to attack him by his version of the testimony, or by the testimony of other parties or witnesses to such communications, again seize the shield of his privilege and shut out all testimony as to the confidential communications but his own. He has waived his privilege and "such waiver is in no sense contrary to public policy; indeed, it is in the interest of truth and justice." Kelly v. Cummens, 143 Iowa, 148, 151, 152, 121 N. W. 540, 542 (20 Ann. Cas. 1283); McKinney v. Grand Street, etc., R. R. Co., 104 N. Y. 352, 355, 10 N. E. 544; Yardley v. State, 50 Tex. Cr. R. 644, 100 S. W. 399, 400; Hunt v. Blackburn, 128 U. S. 464, 470, 9 Sup. Ct. 125, 32 L. Ed. 488; People v. Patrick, 182 N. Y. 131, 74 N. E. 843; Union Pacific R. R. Co. v. Thomas, 152 Fed. 365, 368, 81 C. C. A. 491; People v. Gerold, 265 Ill. 448, 107 N. E. 165, Ann. Cas. 1916A, 636; Grant v. Harris, 116 Va. 642, 82 S. E. 718, 719, 720, Ann. Cas. 1916D, 1081; Hendrickson v. People, 10 N. Y. 13, 27, 29, 61 Am. Dec. 721; People v. Molineux, 168 N. Y. 264, 333, 61 N. E. 286, 62 L. R. A. 193; Inhabitants of Woburn v. Henshaw, 101 Mass. 193, 200, 3 Am. Rep. 333; In re Bendheim (D. C.) 180 Fed. 918, 919; 28 R. C. L. p. 430.

[4] Nor does the fact that the testimony of Mr. Boyd to the privileged communications to Mr. Crowder was given on his cross-examination upon the preliminary hearing seem to us to deprive the waiver it

wrought of its efficacy. It is neither proved nor claimed that he, the bank, or the state objected to his testifying at the preliminary examination on his cross-examination upon the ground that the subject of his testimony was privileged, or on the ground that the subject of it was not germane to his testimony upon his direct examination and legitimate cross-examination thereon. The legal presumption is that the cross-examination was legitimate, germane to and warranted by the direct examination of Mr. Boyd. That is the legal presumption, and there was no offer or claim to the contrary at the trial. In this state of the case, although we are aware that there is authority to the effect that such a waiver may not arise to matters disclosed upon cross-examination on the ground that such disclosure is not a voluntary one (Burgess v. Sims Drug Co., 114 Iowa, 275, 280, 86 N. W. 307, 54 L. R. A. 364, 84 Am. St. Rep. 359), we are unable to resist the conclusion that the stronger reasons and the more persuasive authorities sustain the rule that the waiver extends to every disclosure of the privileged communications made in a legitimate cross-examination upon the subject-matter of the testimony given upon the direct examination.

"The great weight of American authority," says Ruling Case Law, "supports the rule that a witness, who, in his direct examination, voluntarily opens an account of a transaction, will, on his cross-examination, be compelled to complete the narrative; and that he will not be allowed to state a fact and afterwards refuse to give the details. The objection that an answer to a question asked would tend to incriminate the witness must, therefore, be made at the threshold of the examination. He cannot wait and answer a part and then refuse to answer other questions legitimate to a cross-examination. A contrary rule, it has been said, would sanction the obvious injustice of permitting a person to waive his privilege under the constitutional provisions and give testimony to his advantage, or the advantage of his friends, and, at the same time and in the same proceeding, assert his privilege and refuse to answer questions that are to his disadvantage or the disadvantage of his friends. Even a party to the action who voluntarily becomes a witness on his own behalf, and thus waives his privilege, cannot, on cross-examination, refuse to answer in reference to any matter testified to by him in his testimony in chief, on the ground that his answer would criminate him." 28 Ruling Case Law, p. 443, § 30.

Much less can a witness do so on the ground that his testimony on his legitimate cross-examination tends to disclose a privileged confidential communication against the disclosure of which he did not assert his privilege before or when he testified regarding the transaction upon either direct or cross examination. Inhabitants of Woburn v. Henshaw, 101 Mass. 193, 200, 3 Am. Rep. 333; State v. Andrews, 82 Vt. 314, 73 Atl. 586, 137 Am. St. Rep. 1008: Commonwealth v. Mullen, 97 Mass. 545, 546; Ex parte Senior, 37 Fla. 1, 19 South. 652, 653; 32 L. R. A. 133; State v. Fay, 43 Iowa, 651, 653; State v. Wentworth, 65 Me. 234, 240, 243, 246, 247, 20 Am. Rep. 688; Foster v. Pierce, 11 Cush. (Mass.) 437, 439; Commonwealth v. Price, 10 Gray (Mass.) 472, 476, 71 Am. Dec. 668; State v. Nichols, 29 Minn. 357, 358, 13 N. W. 153; State v. K., 4 N. H. 562, 563; State v. Foster, 23 N. H. 348, 354, 55 Am. Dec. 191.

In Kelly v. Cummens, 143 Iowa, 148, 151, 152, 121 N. W. 540, 20 Ann. Cas. 1283, Mrs. Cummens brought an action against Kelly for civil damages for the sale of whisky to her minor son. Kelly employed Mr. Bulman as his attorney to defend him in that case. Mr. Bulman secured postponements and continuances of the case, notified Kelly that he could not postpone it any longer, and to come to the trial, but Kelly declined to do so. Thereupon Mr. Bulman withdrew as Kelly's attorney, and eight days thereafter the judgment against Kelly was rendered for $1,000 damages. Thereafter Kelly filed a petition for a new trial, and pleaded that he never sold any whisky to Mrs. Cummens' son; that he was prevented from defending the action against him by fraud practiced upon him by his attorney and by a misunderstanding between them. Issue was taken upon this petition, evidence was adduced, the issue was tried, the petition was dismissed, and Kelly appealed. At the trial on the petition for a new trial, Kelly testified to the transaction between him and his attorney, Bulman. Thereafter Mrs. Cummens called Mr. Bulman as her witness to the transaction between him and Bulman, and then Kelly objected to that testimony on the ground that that transaction and the communication between him and Bulman were privileged between client and counsel. The Supreme Court of Iowa said:

"It is enough to say that, according to all authorities, a client who goes upon the stand in an attempt to secure some advantage by reason of transactions between himself and his counsel waives his right to object to the attorney's being called by the other side to give his account of the matter. Any other rule would subject the lawyer to any kind of scurrilous and unjust attack, and convert the statute from being a mere shield into a weapon of offense."

In the celebrated case of People v. Patrick, 182 N. Y. 175, 74 N. E. 843, Jones, the accomplice of the defendant Patrick in the murder of Rice, was compelled to testify to conversations in interviews between him and the counsel of Rice and himself. At the time he gave this testimony he did not claim the privilege of silence on the ground that those interviews were privileged because between client and counsel. When, at the trial of the case, he made objection to testifying on the ground that they were privileged on that account, the Court of Appeals of New York said:

"The privilege is the client's, and when Jones volunteered his testimony in the case, it was, necessarily, equivalent to an express waiver on his part, in open court, of any privilege accorded by the statute."

[5] It is no objection to Mr. Boyd's waiver that his testimony at the preliminary examination was under oath, and it would have been no objection if he had been under subpœna, as he was not proved to have been, because he could, as it was, have asserted his privilege and declined to testify. As he did not do so, his testimony was in law and in fact voluntary.

In State v. Campbell, 73 Kan. 688, 696, 699, 700, 701, 85 Pac. 784, 9 L. R. A. (N. S.) 533, 9 Ann. Cas. 1203, where the defendant was convicted of the crime of taking a bribe to influence his action as a member of the board of education, he had been subpœnaed and had

testified at the preliminary examination before the grand jury, without claiming his privilege of silence, on the ground that his testimony might incriminate him. On his subsequent trial on his indictment, grand jurors who heard his testimony before them were called to testify thereto, and he objected to their testimony to his former testimony on the ground that his testimony had been given under subpoena and under oath, and that it might tend to incriminate him. The Supreme Court of Kansas overruled the objection and quoted with approval this paragraph from the opinion in Hendrickson v. People, 10 N. Y. 13, 27, 29:

"It is now regarded as a well-settled rule, and recognized in the elementary books, that where a witness answers questions upon examination on a trial tending to criminate himself, and to which he might have demurred, his answers may be used for all purposes. * * * Such answers are deemed voluntary, because the witness may refuse to answer any question tending to criminate him. * * * Independent of any supposed authority, I do not see how, upon principle, the evidence of a witness, not in custody and not charged with crime, taken either on a coroner's inquest or before a committing magistrate or a grand jury, could be rejected."

In the celebrated case of People v. Molineux, 168 N. Y. 264, 333, 61 N. E. 286, 309 (62 L. R. A. 193), the defendant attended the inquest in obedience to a subpoena and testified without claiming his privilege to refuse on the ground that his testimony might incriminate him, and on his subsequent trial the Court of Appeals held that his testimony was admissible and said:

"The law presumes that a party who is called upon to testify as a mere witness knows his rights. He may decline to testify to anything that may tend to incriminate him. This the defendant could have done had he chosen to claim his privilege. Having failed to do so, he cannot now complain."

To the same effect are State v. Broughton, 29 N. C. 96, 45 Am. Dec. 507; State v. Andrews, 82 Vt. 314, 73 Atl. 586, 137 Am. St. Rep. 1008; Yardley v. State, 50 Tex. Cr. R. 644, 100 S. W. 399, 400, 123 Am. St. Rep. 869.

If the sacred privilege of refusing to testify to that which may incriminate is so conclusively waived by failing to invoke it before testifying, by how much more was the privilege of refusing to testify to the communications between Mr. Boyd and Mr. Crowder waived by the testimony of Mr. Boyd to them at the preliminary hearing of Mrs. Steen without claiming the privilege waived in this case.

In our opinion Mrs. Steen should have been permitted to prove by Mrs. Harrison, or any other witness by which she could prove it, the testimony of Mr. Boyd and of Mr. Brosius and of Mr. Searles at the preliminary examination as to the statements they made to and the transactions they had with George Crowder, the assistant prosecuting attorney, touching the guilt or innocence of Mrs. Steen before she was arrested.

The judgment below therefore is reversed, and the case is remanded to the court below, with directions to grant a new trial.