Paul W. **TILLOTSON**, Special Agent,
Internal Revenue Service, Petitioner,

v.

Jackson L. **BOUGHNER**, Respondent.

No. 63 C 1522.

United States District Court

N. D. Illinois, E. D.

Feb. 23, 1965.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., Robert A. Maloney, Trial Atty., Dept. of Justice, Washington, D. C., Thomas J. Curoe, Chicago, Ill., for petitioner.

William A. Barnett, Crowley, Barnett & Goschi, Chicago, Ill., for respondent.

WILL, District Judge.

On December 16, 1963, 225 F.Supp. 45, this Court issued an order in the instant case directing the respondent, Jackson L. Boughner, to appear before the petitioner.

> "to give testimony relating to the tax liability of John Doe, the unknown taxpayer, or taxpayers, on whose behalf Jackson L. Boughner delivered to the Internal Revenue Service a cashier's check for $215,-499.95, dated July 27, 1961, and drawn on the La Salle National Bank, Chicago, Illinois."

The United States Court of Appeals for the Seventh Circuit affirmed the order. 333 F.2d 515 (7 Cir. 1964). The Supreme Court denied the petition for certiorari filed in the action. 379 U.S. 913, 85 S.Ct. 260, 13 L.Ed.2d 184 (1964).

Having exhausted all avenues of appeal, the respondent appeared before the petitioner on December 8, 1964, answered some questions, but refused to give other testimony as required by the order; e. g., he refused to divulge the identity of the client on whose behalf he had delivered the aforementioned check. As a result, the petitioner has moved for an order requiring the respondent to show cause why the court should not hold him in contempt and invoke appropriate sanctions.

In the initial controversy before the Court, which was the subject of an opinion reported at 225 F.Supp. 45 (N.D.Ill. 1963), respondent limited his defense to challenging the validity of the summons issued by the petitioner pursuant to § 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602. The discussion between the Court and counsel prior to the entry of the order touched not only on the issue of the validity of the summons but also on whether the respondent was contending that the answers to the questions which would be asked under the summons might be privileged. The respondent, however, specifically did not urge this defense on the Court, counsel stating that he was not raising the defense of privilege "at this time." Accordingly, the second conclusion of law entered herein on December 16, 1963, reads as follows:

> "An individual whom the Commissioner has substantial reason to believe has knowledge relevant to an inquiry into the liability of a taxpayer for an internal revenue tax may be compelled, *absent any claim of constitutional or other privilege,* by a summons issued pursuant to § 7602 to testify with respect thereto." (emphasis added)

Respondent now seeks for the first time to raise the attorney-client privilege in defense of his refusal to answer certain questions asked him relative to the identity of the client for whom the $215,499.95 check was deposited. Were the attorney-client privilege applicable to this particular situation—and we will discuss below why we deem it not to be —the facts as we have them here clearly indicate a waiver of that defense. At the time respondent challenged the validity of the summons he was given ample opportunity to raise alternative defenses. He chose not to do so then, but now, having failed all the way to the Supreme Court with one defense, seeks to urge a second upon the Court.

■ Rule 12(h) of the Federal Rules of Civil Procedure provides that a party "waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply," with certain exceptions not here applicable. Rule 12(g) requires a party making a motion to consolidate therein all defenses or objections then available to him to be raised by motion or be deemed to have waived them. It is, of course, well settled that a claim of privi-

lege must be timely raised or it will be deemed to have been waived. La Moore v. United States, 180 F.2d 49, 12 Alaska 556 (9 Cir. 1950); Steen v. First National Bank, 298 F. 36 (8 Cir. 1924).

Under the circumstances hereinbefore set forth, the Court considers respondent's previous failure to raise the privilege claim as a waiver of that defense and all other defenses not then raised except those, like the defense of jurisdiction, which are not capable of being waived.

Not only has any claim of privilege been waived but, as a matter of substantive law, the attorney-client privilege is not applicable in the context here presented. The existence of an attorney-client relationship is not privileged nor is the identity of the parties engaged in such a relationship protected by the privilege. The privilege pertains to communications between the attorney and his client, not to the fact that the two parties are so associated. Behrens v. Hironimus, 170 F.2d 627 (4 Cir. 1948); Mauch v. Commissioner, 113 F.2d 555 (3 Cir. 1940).

It is generally recognized that the privilege against disclosure of information confidentially revealed to an attorney is personal to the client and may only be asserted by him. As was stated in Steen v. First National Bank, supra, 298 F. at p. 41,

"But this privilege of preventing the disclosure of confidential communications is a personal one. It is not a right effective without claim or assertion. It is a mere privilege, that has no practical existence or effect, unless personally and timely claimed by its possessor. It must be presented and claimed by the owner when the subject matter of it is first presented."

Counsel for the respondent concedes that Illinois law also requires the claim of attorney-client privilege to be raised by the client. In re Estate of Busse, 332 Ill.App. 258, 75 N.E.2d 36

(1947). The precise question of whether an attorney may refuse to divulge the identity of a client has apparently never been considered by the Illinois courts, but there is no basis to conclude that in Illinois the client's privilege may be asserted by the attorney as to the identity of the client when it is clear that it may not be so asserted with respect to any other disclosure.

Respondent's counsel urges that since the substantive information has already been disclosed, i. e., that some person admits that he owes at least $215,499.95 in federal income taxes, the attorney, under the attorney-client privilege, must be permitted to refuse to identify the client or else that information combined with the facts already disclosed may incriminate the unknown taxpayer. It may be noted in passing that the investigation pursuant to which the instant summons was issued relates to civil tax liability only. But even if a criminal investigation were involved, it is clear that voluntary disclosure of specific acts by an individual constitutes a waiver of the constitutional privilege against self-incrimination. Absent an immunity agreement, a person may not admit illegal conduct and then refuse to disclose his identity. The privilege must be invoked at the outset or it is waived. As was said by the Supreme Court in Rogers v. United States, 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951), "[W]here criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details."

Under the circumstances, it would appear that the client, by directing the sending of the check, a voluntary disclosure of tax liability, has waived any further claim of privilege with respect thereto.

Respondent supports his assertion of the attorney-client privilege by citing Baird v. Koerner, 279 F.2d 623, 95 A.L.R. 2d 303 (9 Cir. 1960). That case, while involving similar facts, is distinguishable here for several reasons. First,

Koerner is based on California law. After giving careful attention to the choice of law question, the Court found that state law applies and that the California law on attorney-client privilege is very broad as was stated in Ex parte McDonough, 170 Cal. 230, 149 P. 566, L.R.A.1916C, 593 (1915). The Supreme Court of California there held that disclosure of the identity of the client who had employed the attorney to represent a criminal defendant was privileged since, under the particular circumstances, it would constitute an acknowledgment of guilt by the client. The Ninth Circuit concluded that, under California law, for Baird to answer any questions as to the identity of the client who employed him would cause him to divulge a confidential communication made to him in the course of his employment. See especially 279 F.2d at 634, n. 18.

Second, as previously pointed out, no criminal action is here threatened, the investigation being limited to the tax liability of the unknown taxpayer.

 The Court concludes, in light of the foregoing, that whether Illinois or federal law applies, the questions put to respondent concerning the identity of the client for whom he acted in depositing the check here under investigation are not subject to the attorney-client privilege.

While the conclusions heretofore reached as to both the waiver of any claim of privilege and its inapplicability in any event to the instant case are determinative as a matter of law, it may be appropriate to observe that they are also pragmatic. The law does not function in a vacuum, and the courts are not maintained to provide counsel a forum in which to demonstrate their skill in legal gamesmanship. Without intending to impugn the actions of any of the participants, a brief review of the past and probable future history of the case will demonstrate the dangers to the orderly and sensible administration of justice inherent herein.

On July 27, 1961, respondent delivered a cashier's check for $215,499.95, together with a covering letter to the District Director of Internal Revenue at Chicago. The letter stated that the check was in payment of a federal tax but did not identify the taxpayer or the nature of the tax. After endeavoring unsuccessfully by informal inquiry to ascertain the name of the taxpayer, the Internal Revenue Service summoned the respondent to a formal hearing on January 15, 1963.

At that hearing, the respondent challenged the validity of the summons for the hearing and refused to answer any questions put to him. The government thereupon petitioned this Court for an order requiring him to answer questions pursuant to the summons. Responsive pleadings and briefs were filed, hearings were held by the Court and on December 16, 1963, an order with an accompanying opinion was issued directing respondent to appear before the petitioner and give the testimony sought.

Respondent appealed this order to the Court of Appeals for this Circuit, which affirmed on June 17, 1964. After a rehearing was denied on July 20, 1964, a petition for a writ of certiorari was filed with the United States Supreme Court which was denied on November 16, 1964. Thereafter, on December 8, 1964, respondent appeared, answered some of the questions put to him and refused to answer others, including all relating to the identity of his client, except to say that he was acting for an attorney who was not the taxpayer but his counsel.

On January 22, 1965, petitioner filed the present petition for a rule to show cause why respondent should not be held in contempt for failure to comply with this Court's order of December 16, 1963. At the hearing on February 12, 1965, respondent's counsel contended that the Court had never ordered respondent to answer the specific questions which he had refused to answer on December 8, 1964, and that therefore respondent could not be held in contempt for his refusal. In addition, counsel maintained

that respondent was justified in his refusal on the ground that the information was privileged.

While of the opinion that the particular questions were clearly within the scope of the order of December 16, 1963, the Court, after denying the defense of privilege, ordered respondent to answer the specific questions forthwith and recessed the hearing on the petition for a rule to show cause pending respondent's response thereto.

Later, on the same day, February 12, 1965, the Court was advised that a hearing had been held at which the respondent had again declined to answer some of the specific questions, including the name of his client, the attorney for the taxpayer. Thereupon an order of contempt was entered and a fine of $100 per day imposed until such time as respondent should purge himself of his contempt. A short stay of execution pending appeal was requested and granted and the case is again on its way back to the Court of Appeals.

To date more than three years and six months have elapsed since the check and letter were first delivered to the Internal Revenue Service, more than two years have elapsed since respondent first refused to answer any questions put to him about it, and more than one year has elapsed since this Court first ordered him to do so.

What is the future prognosis? It is obvious, of course, that if it is ultimately held that respondent has a presently valid defense of privilege, the sought information will never be obtained and the passage of time will be immaterial. Let us assume, on the other hand, that the final ruling is to the contrary. In the light of the prior history of this case, at least one year and, if the Supreme Court hears the case, quite possibly a much longer period will elapse before respondent is finally compelled to give the information which the Internal Revenue Service has been seeking since 1961.

And what will they learn in 1966 or 1967? We know already that they will not ascertain the name of the taxpayer or taxpayers but only the identity of the attorney pursuant to whose request respondent forwarded the check and letter on July 27, 1961. Presumably the same sequence of events, hopefully shortened somewhat by the prior experience and rulings, will then ensue. If the petitioner is successful in each of the courts, all the principals survive and each step of the proceedings is expedited, the Service may, some time in 1970, learn the identity of the taxpayer. At about that same time, the United States anticipates that one of our astronauts will be landing on the moon and it will be a close question which will be the greater or more costly achievement.

Unlike Scrooge, no judge has the power to prevent this pathetic future from transpiring. Having delineated the past, the present and the spectre of the future, the Court can only pray that the Executive and Legislative branches, either of which can do so, will act so that the body of justice will not continue to be burdened by the affliction of this case.

Meanwhile, an order finding the respondent in contempt and imposing sanctions has been entered.