Thomas B. BAILEY, Plaintiff,

v.

MEISTER BRAU, INC., et al., Defendants.

Nos. 69 C 1938, 71 C 114.

United States District Court,
N. D. Illinois, E. D.

May 16, 1972.

Nachman, Munitz & Sweig, Donald Page Moore, Pope, Ballard, Kennedy, Shepard & Fowle, Chicago, Ill., for plaintiff.

Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., for Continental Illinois National Bank, James H. Black Co., Meister Brau, Robert G. Mullen, Charles F. Schaeffer, Ronald T. Cappadocia & James H. Black, Jr.

## MEMORANDUM OPINION

McLAREN, District Judge.

This federal securities law suit arises out of Meister Brau, Inc.'s purchase of the James H. Black Company from the estate of James H. Black, Sr. Plaintiff, a former chief operating officer and director of the Black Company, alleges that defendants Meister Brau, the Black family, and the executors of the Black estate conspired to breach his contract right to purchase the company.

Pursuant to Rule 37(a), Fed.R.Civ.P., plaintiff has moved for an order compelling defendants Cappadocia and Foster to answer certain questions which they refused to answer at their oral depositions.

Defendant Cappadocia, a Meister Brau senior vice president, was installed as president and chairman of the board of the Black Company by the majority vote of defendants Continental. Bank, as executor, and Mrs. Harre on May 16, 1969. Meister Brau purchased the assets of the Black Company and the stock held by the estate and Mrs. Harre on June 6, 1969.

On advice of counsel, defendant Cappadocia refused to answer plaintiff's questions regarding the substance of his conversations between May 16 and June 6, 1969 with Meister Brau's counsel regarding Meister Brau business. Cappadocia testified that the business discussed was the acquisition of the Black Company.

Defendants' objection to the questions concerning the content of those discussions is based on the attorney-client privilege. Their position is that Cappadocia's conversations with Meister Brau's counsel are privileged because he was serving an an officer of that company. Defendants correctly state that the corporate attorney-client privilege has been recognized in Illinois, Day v. Illinois Power Co., 50 Ill.App.2d 52, 199 N. E.2d 802, 804 (1964), and is now applied by the federal courts sitting in Illinois. Radiant Burners, Inc. v. American Gas Association, 320 F.2d 314, 322 (7th Cir.), cert. denied, 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1963).

There are no reported opinions dealing with the attorney-client privilege in the context presented by Cappadocia's dual fiduciary capacity. However, Professor Wigmore admonished:

"Nevertheless, the privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete. . . . It is worth preserving for the sake of general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 J. Wigmore, Evidence § 2291, at 554 (McNaughton rev. ed. 1961).

This approach is followed in this circuit. Radiant Burners, Inc., 320 F.2d at 323.

Plaintiff urges several theories as to why the privilege should not apply in this situation, and defendants have responded by distinguishing plaintiff's cases or noting that no authority supports his propositions. Apparently, no court has dealt with this precise fact situation before. However, applying basic principles, it appears that the privilege should not be upheld in these circumstances.

Plaintiff relies on Gouraud v. Edison Gower Bell Telephone Co. of Europe, Ltd., 57 L.T.Ch. 498, 59 L.T. 813 (1888), and Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), which followed it. In both of these cases it was held that the attorney-client privilege did not bar a shareholder-plaintiff in a derivative suit from discovering the communications between his corporation and its counsel. Although these cases do not directly support plaintiff, Garner is useful because it sets up an approach to problems involving the privilege that seems applicable here. The Garner court, 430 F.2d at 1100, set out Wigmore's four conditions for the recognition of any privilege:

"(1) The communications must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation." 8 J. Wigmore, Evidence § 2285, at 527 (McNaughton rev. ed. 1961).

That court balanced the possible injury to management and non-party shareholders against the benefits to be obtained by the shareholders who brought the suit and concluded that the policy in favor of disclosure should prevail. In reaching this decision, the court found analogies to two traditional exceptions to be persuasive. The first concerns communications made by a client to his attorney during or before the commission of a crime or fraud. The court recognized that the exception was particularly applicable where the persons communicating with counsel, management, have an obligation to the party seeking discovery, the shareholder, to act lawfully and without fraud. 430 F.2d at 1103. The second exception, which the Garner court found instructive, operates where the same attorney has acted for two or more persons having a common interest who later become involved in a controversy. In this connection, plaintiff cites Tugwell v. Hopper, 50 Eng.Rep. 616, 10 Beav. 348 (Rolls Ct.1847), and Monier v. Chamberlain, 35 Ill.2d 351, 221 N.E.2d 410 (1966). In *Tugwell*, it was held that the privilege did not apply where the same attorney was trustee for two separate parties. In *Monier*, it was held that the statements of a policyholder to his insurer are not protected by the privilege when the insurer is also an agent of a potentially adverse party. Although defendants correctly point out that the facts of this case differ from those in *Tugwell* and *Monier* because here the client, not the attorney, had an alleged conflict of interest, this line of cases tends to support plaintiff's contention.

Although Garner dealt with a situation where the communications were with counsel for the corporation of which the plaintiffs were shareholders, the court specifically noted that it did not consider it determinative whether the attorney consulted was retained by the corporation or by management on its own account. 430 F.2d at 1102 n. 18. The important consideration was that management's duties gave the shareholders a sufficient interest in knowing its

legal communications to outweigh the interests served by confidentiality. That interest is even stronger where an executive's communications have been with counsel for a party whose interests are potentially adverse to those of the executive's shareholders, as here. The fact that defendant Cappadocia asserts that he was wearing his "Meister Brau hat" during those discussions of the purchase of Black Company changes nothing. A fiduciary cannot turn his responsibilities on and off like a faucet; Cappadocia was under a continuing obligation to plaintiff as a shareholder between May 16 and June 6, 1969. As long as that duty existed, so did the concomitant interest of the Black Company shareholders in knowing his legal communications concerning the future of their company.*

Plaintiff's claim contains substantial allegations of wrongful action by Cappadocia and others, and the disclosures sought have been identified clearly and are not available elsewhere. Thus, in balance, there is good cause to require Cappadocia to answer plaintiff's questions concerning his conversations with Meister Brau's counsel during the time in question.

Defendant Foster acted as attorney and officer for the Black Company and as attorney for the executor of the Black estate until Meister Brau's acquisition. He testified at his deposition that he had been retained by Meister Brau subsequent to the acquisition, in connection with its purchase of a foreign company, but that he never received any money or promise of money from anyone other than the Black estate for any work concerning Meister Brau's takeover of the Black Company. He refused to answer questions concerning the amount of his fees from Meister Brau and the existence of any memorandum outlining his agreement with them.

Plaintiff's position is that Foster's fees from Meister Brau may have been a reward for improper cooperation in the purchase of the Black Company. In his brief, plaintiff argues that he is entitled to discover when Foster's retainer was first discussed, by whom, and the amount of the fees. The record of the deposition, however, does not show that Foster was ever asked when the discussion of his employment took place and with whom. This Court, therefore, has no occasion to compel answers to such questions.

 Foster's objections to the questions on the size of his fees and the existence of a memorandum are based on a claimed lack of relevance and the attorney-client privilege. The scope of relevance for discovery purposes is far broader than for evidentiary purposes. Carrier Mfg. Co. v. Rex Chainbelt, Inc., 281 F.Supp. 717, 718 (E.D.Wisc.1968). The amount of the fees and any memorandum of agreement are relevant to plaintiff's theory that Foster was improperly influenced by Meister Brau's offer of employment. The fact that Foster has stated that he has received no money or promise of money from Meister Brau for his work during the acquisition of Black Company does not make further inquiries into his ties with Meister Brau "clearly irrelevant," as would be required to sustain the objections on this ground. Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co., 41 F. R.D. 55, 58 (D.P.R.1966).

 In the absence of unusual circumstances, the amount of an attorney's fee and the conditions of his employment do not come within the attorney-client privilege. In re Semel, 411 F.2d 195, 197 (3d Cir.), cert. denied, 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181 (1969); Behrens v. Hironimus, 170 F. 2d 627, 628 (4th Cir. 1948); *but see*

---

* The *Garner* court did not hold that the attorney-client privilege is always lost when those demanding disclosure are shareholders. It outlined a set of criteria for determining when there is "good cause" not to give effect to the privilege. 430 F.2d at 1104.

*Magida ex rel. Vulcan Detinning Co. v. Continental Can Co.*, 12 F.R.D. 74, 77 (S.D.N.Y.1952).

In *Tillotson v. Boughner*, 350 F.2d 663, 666 (7th Cir. 1965), rev'g 238 F.Supp. 621 (N.D.Ill.), in holding that the privilege barred disclosure of who had retained an attorney, the court quoted with approval from 97 C.J.S. Witnesses § 283, at p. 803:

" . . . [A]n attorney may not be compelled, at the instance of a hostile litigant, to disclose his retainer or the nature of the transaction to which it related, when such information could be made the basis of a suit against his client." 350 F.2d at 666.

The court, however, qualified its adoption of this language by referring to the "peculiar" facts of the case. In *Tillotson*, and in *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960), upon which it relied, facts which would constitute confidential communications had already been shown, with the only question being the identity of the client who had communicated them. This is not the situation in the instant case, where the inquiry is directed solely at the retainer agreement, which is not itself a confidential communication. *United States v. Pape*, 144 F.2d 778, 782 (2d Cir.), cert. denied, 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944). The attorney-client privilege is therefore no bar to plaintiff's questions on the amount of Foster's fee and any memorandum setting out his agreement with Meister Brau.

Defendant Cappadocia was instructed not to answer plaintiff's questions concerning his knowledge of Foster's financial arrangement with Meister Brau subsequent to the acquisition of the Black Company. The objection was that such questions could not be relevant unless limited to "transactions involved in this litigation." In light of the broad scope of relevance for discovery purposes and the conclusion above as to the relevance of the questions put to Foster, this objection is without merit.

The defendants' objections to the questions dealt with herein are overruled, and defendants Cappadocia and Foster are ordered to respond to them.

It is so ordered.