## FOLEY v POSCHKE

Ohio Appeals, 8th Dist, Cuyahoga Co

No 17561.  Decided. Jan 22, 1940

J. H. Read, Cleveland, for plaintiff-appellee.

Raymond Cookston, Cleveland, for defendant-appellant.

## OPINION

By MORGAN, J.

The plaintiff in this case is a private detective and was employed by the defendant to do detective work to secure information that would be of assistance to her in an action for divorce and alimony brought by her and then pending in the common pleas court of this county. The trial court found that the employment was at the rate of Twenty-Five Dollars ($25.00) per day and that crediting the defendant with the sum of Three Hundred and Ninety-Five Dollars ($395.00) paid by her in cash to the plaintiff, there was a balance due to him of Two Thousand Six Hundred and Five Dollars ($2605.00) for which amount judgment was rendered.

One of the attorneys employed by the defendant in the same litigation was George W. Spooner, of the Cleveland Bar. Mr. Spooner was called as a witness by the plaintiff at the trial of this case and was permitted to testify concerning communications made by the defendant, as client, to Mr. Spooner, and advice given to her by him, over objections by defendant's counsel that such communications and advice were privileged under §11494 GC, which in part is as follows:

"The following persons shall not testify in certain respects * * *. An attorney, concerning a communication made to him by his client in that relation, or his advice to his client, or a physician concerning a communication made to him by his patient in that relation, or his advice to his patient. But the attorney or the physician may testify by express consent of the client or patient, and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject."

Such communications to the attorney and advice to the client were permitted to be introduced by the trial judge because they were made and given in the presence of the plaintiff. The trial court accepted the view that such communications and advice ceased to be privileged when made in the presence of a third party. Such is the general rule but only when  a third party is present are such communications to the attorney and advice by the attorney to the client not privileged.

28 Ruling Case Law, 562.

"Where it appears that a third person was present only part of the time, the evidence should be confined to what was said in his presence."

There is, however, an important exception to this rule of law. When the third person present at a conference between attorney and client is an agent of either, then there arises no presumption that such communication and advice were not made and given in confidence and they do not cease to be privileged because made in the presence of a third party.

In **Wigham v Bannon, Administrator, 21 Oh Ap 496,** the court held that under §11494 GC, a communication made to an attorney in the presence of a third party is not privileged. The court quotes as authority, 5 Wigmore on Evidence (2nd Edition) §2311, and cites

28 Ruling Case Law 561. The quotation from Wigmore on Evidence is as follows:

"The privilege assumes, of course, that communications are made with the intention of confidentiality. The reason for prohibiting disclosure ceases when the client does not appear to have been desirous of secrecy. 'The moment confidence ceases', said Lord Eldon, 'privilege ceases'. This much is universally conceded. * * * One of the circumstances, by which it is commonly apparent that the communication is not confidential is the presence of a third person, not being the agent of either client or attorney."

In 28 Ruling Case Law, 561, it is stated:

"If the client chooses to make or receive his communications in the presence of third persons, it ceases to be confidential and is not entitled to the protection afforded by the rule."

But the same exception is recognized in the following language on page 562:

"It has been held that no reason of necessity requires that any witness, save an interpreter, should ever be present at a consultation between the client and his attorney, but it would seem, however, that such a rule is too narrow. It would exclude the presence of the client's agents who in some instances at least must be present at conferences between attorney and client, in order that counsel may obtain accurate information of the facts.***."

70 Corpus Juris 435:

"The presence of a confidential agent of the client at a conference between attorney and client, does not, however, destroy the privilege."

In this case it was desirable that the plaintiff should be present at the conferences of the defendant with her attorney, Mr. Spooner, so that the latter could obtain "information of the facts".

It is a part of the plaintiff's case that he was a confidential agent of the defendant and his presence at meetings between the defendant and her attorney did not indicate that either the defendant or her attorney was speaking other than in the confidence protected by §11494 GC.

If the presence of the plaintiff at these meetings would prevent the defendant from asserting a claim of privilege, as to what occurred at such meetings, then the defendant's husband in the litigation then pending would have had the right to call Mr. Spooner as a witness in his case and compel him to divulge all that transpired between him and his client, Mrs. Poschke, in the presence of Mr. Foley. Clearly, such evidence would not have been received in the face of the client's insistence that all such communications and advice were privileged. The fact that in this case the agent who was present at such interviews is the plaintiff makes no difference.

The defendant testified in her own behalf at the trial in this case and Mr. Spooner was again called as a rebuttal witness by the plaintiff and testified at even greater length than he did in chief as to communications made by Mrs. Poschke as client and advice given by him to her as her attorney. It is plaintiff's claim that by taking the stand in her own behalf Mrs. Poschke waived her privilege under §11494 GC, by reason of that part of the section which provides that:

"If the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject."

Sec. 11494 GC, defines the privilege in the relation of attorney and client and of patient and physician. The privilege is identical in both cases.

The question whether or not and to what extent privilege is waived by a client or a patient by taking the stand has been considered by the Supreme Court of Ohio in a number of cases. The last case is **Harpman v Devine,**

Receiver, 133 Oh St 1. In that case the plaintiff brought an action for damages for personal injury and testified that his general physical condition prior to the date of the accident had been good. On cross-examination, the plaintiff answered that he had consulted various physicians before the accident, including Dr. Fusselman. He was then asked on cross-examination as to what Dr. Fusselman had treated him for and what was the matter with the plaintiff when he consulted the doctor, to which the plaintiff gave replies which were not satisfactory to the defendant. After the plaintiff had rested his case, the defendant called Dr. Fusselman as a witness and he was asked as to what plaintiff's complaints were and what treatment was given him at the times as to which the plaintiff had been cross-examined. Dr. Fusselman refused to answer on the ground that all such communications were privileged. The second and third paragraphs of the syllabus in Harpman v Devine, Receiver, 133 Oh St 1, are as follows:

"1. Where, in an action for damages for personal injuries, the plaintiff on direct examination testifies that his general physical condition was good before an accident, such declaration alone without mention of any treatment by or communication to or from any physician is not a waiver of the protection of §11494 GC, forbidding a physician to testify concerning treatment or communications without express consent of the patient."

"2. Where a patient voluntarily testifies as to his general physical condition, such testimony will not enlarge the term "subject" as used in §11494 GC, so as to permit a physician to testify, without the express consent of the patient concerning treatments for a specific ailment of the patient."

The court, in its opinion, said on page 5:

"The 'subjects' privileged under the statute are 'communications' and 'advice'. The relationship between physi-cian and patient is protected and privileged under the law, not for the benefit of the physician but solely for the patient. Since there was no express consent in the instant case, the lips of Dr. Fusselman were sealed under the law unless the plaintiff voluntarily testified respecting any communications or advice from the physician."

As to plaintiff's evidence given on cross-examination the court said an page 6 of its opinion:

"The plaintiff had no choice about the matter. He was obliged to answer or be in contempt of court. Obviously, in such a situation the plaintiff did not 'voluntarily' testify respecting any 'communication' or 'advice' from Dr. Fusselman. There was no waiver in the testimony on cross-examination."

The court, in 133 Oh St 1, refers to King v Barrett, 11 Oh St 261, and to Spitzer v Stillings, Executor, 109 Oh St 297, and states that:

"These two cases are distinguishable from the case at bar."

Although the Supreme Court of Ohio, in its opinion in 133 Oh St 1, states that the above two prior cases can be distinguished, it is not easy to distinguish them.

In the case in 11 Oh St 261, a plaintiff was asked on cross-examination as to certain alleged communications made by him to his attorney, which he denied making. The court held that plaintiff's answers to these questions waived his privileges and the attorney was permitted to testify as a witness called by the defendant that the communications denied by the client were actually made.

In 109 Oh St 297, it was held that when a client testified as to a certain subject, the attorney could be called by the opposing party to testify on the same subject matter,

"even though no reference was made in the testimony of such party to any communication having been made."

The case in **133 Oh St 1,** clearly holds that a client waives his privilege only by testifying voluntarily to "communications" to his attorney and "advice" given by his attorney.

We deem it our duty to follow the decision in **133 Oh St 1,** as being the latest expression of the Supreme Court of Ohio on this question.

In the light of the law on this subject, as set forth by our Supreme Court, let us consider to what extent Mrs. Poschke by taking the stand, waived her privilege in this case, to prevent her attorney from testifying.

On direct examination, Mrs. Poschke testified as follows:

Q. "How many times, as nearly as you can remember, did you meet Foley in Spooner's office?

A. Maybe five or six times that I recall."

Under §11494 GC, this answer clearly opened the door to the ▆▆▆▆▆▆ ▆ plaintiff to call Mr. Spooner on rebuttal to testify as he did that Mrs. Poschke was in his office forty or fifty times. We do not find in Mrs. Poschke's evidence in chief any statement as to the communications made by her to Mr. Spooner or advice given by him to her.

On cross-examination, Mrs. Poschke was asked a number of questions as to her communications to Mr. Spooner, such as, "didn't you say to Mr. Spooner that Mr. Foley was the only one you ever had who got you information,"—and—"didn't you tell Mr. Spooner that you were paying Mr. Foley Twenty-Five Dollars ($25.00) a day and you expected results?" In both cases the witness testified that she did not make such statements.

Mr. Spooner on rebuttal gave evidence contradicting the statements of his former client, both on her direct and cross-examination. He also, on rebuttal, testified to many things not touched upon by Mrs. Poschke, either in her direct or cross-examination. Among them were the following:

He testified as to the circumstances under which he had become Mrs.

Poschke's attorney; as to the retainer paid him by Mrs. Poschke; as to communications made by Mrs. Poschke to him at different times, such as "she wanted to be sure to get something sure on Mr. Poschke this time, because I have had trouble with him two or three times before and I want to make it sure this time." That he advised Mrs. Poschke that "we have got enough from Mr. Foley's investigation up to this time to hand Mr. Poschke," and that Mrs. Poschke stated to him that Mr. Foley had been working for her "six weeks prior to my retainer and my retainer was August 5th or 6th, 1937."

All of the above covered matters not referred to in the evidence given by Mrs. Poschke.

Counsel for the defendant, Mrs. Poschke, objected to this line of evidence by Mr. Spooner and the court stated that Mr. Cookston's objections would be considered as directed to all such questions as to Mr. Spooner "so there don't have to be an interruption to each question and answer."

It is our opinion that the greater part of Mr. Spooner's evidence on rebuttal regarding communications to him by Mrs. Poschke and his advise to her, was inadmissible under any decision of the Supreme Court of this State.

In **109 Oh St 297,** the court said in the second paragraph of the syllabus:

"If it is desired to impeach the testimony of the party by the testimony of the attorney a proper foundation must first be laid for such contradiction. **King v Barrett, 11 Oh St 261,** approved and followed."

In **11 Oh St 261,** the court said that the client "was bound upon proper inquiry to tell the whole truth and his testimony became liable to the application of all the usual tests of truth and to impeachment like that of any other witness, and for this purpose his attorney might be called to prove statements and admissions which **his** client as a witness had denied."

In that case the attorney was asked only as to statements made to him by the client which on cross-examination the client had denied making. In other words the proper foundation was laid for each contradiction.

**Sec. 11420 GC**, provides that after both sides at a trial have produced their evidence,

"the parties then shall be confined to rebutting evidence, unless the court, for good reasons, in the furtherance of justice, permits them to offer evidence in their original cases."

Mr. Spooner's evidence, as we have stated, was not admissible in plaintiff's original case and the question to be decided is its admissibility on rebuttal.

It is our conclusion that Mr. Spooner was permitted to testify on rebuttal to many things not properly rebuttal and as to which no proper foundation had been laid. If we are to be guided by the most liberal construction of the decisions in **11 Oh St 261**, and **109 Oh St 297**, the greater part of Mr. Spooner's evidence on rebuttal as to communications by and advice to Mrs. Poschke, was incompetent. On the basis of the decision in **133 Oh St 1**, which holds that evidence given by a client on cross-examination is not given voluntarily, and does not waive privilege, nearly all of Mr. Spooner's evidence on rebuttal as to such communications and advice was incompetent.

No one can question that Mr. Spooner's evidence was material and may have been decisive with the trial court.

For error in admitting this evidence, the case will be reversed and a new trial had.

TERRELL, PJ. & LIEGHLEY, J., concur.