In re Estate of Marie Busse, Deceased.
Helen Collins, Appellee, v. Frances Utley, Adminis-
trator of Estate of Marie Busse, Deceased, Ap-
pellant.

Gen. No. 10,168.

Opinion filed September 26, 1947. Released for publication October 20, 1947.

SAMUEL J. STEPHENS, ARTHUR L. PUKLIN and JEROME NELSON, all of Aurora, for appellant.

W. C. O'BRIEN, of Aurora, for appellee; W. C. O'BRIEN, of Aurora, and WILSON D. BURNELL, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.
In the county court of Kendall county, appellee, on February 17, 1945, filed her claim for $5,000 in the estate of Marie Busse, deceased. The claim and bill of particulars filed by claimant alleged that there had been an account stated between claimant and the deceased and that the deceased about the first of October 1942, expressly promised, in consideration of claimant remaining with deceased, nursing her, attending to her business affairs and caring for her house and property, to pay to her the sum of $5,000. The county court disallowed the claim. An appeal

was taken to the circuit court resulting in the claim being allowed as a seventh class claim and a judgment in favor of the claimant for $5,000. From that judgment the administrator has appealed.

Roger Clark was the only witness who testified upon the hearing. He testified that he was a lawyer living in Yorkville and had practiced his profession there for many years; that he represented Marie Busse, the deceased, from 1933 to the date of her death and after her husband's death which occurred on September 28, 1942, he represented her in her capacity as administrator of her husband's estate; that to a certain extent he was familiar with her business transactions; that the claimant, Helen Collins, came to his office with Marie Busse about the time of the death of Frank Busse (husband of Marie Busse) and he is familiar with the business transactions between Marie Busse and Helen Collins and that Mrs. Collins handled the property known as "The Elms" which is a timber tract of land containing 15 or 20 acres along the Fox River and located one or two miles east of Yorkville; that it is used as a resort property and is improved with buildings and cottages and the Busses lived there; that Frank Busse was killed in an accident in 1942 and that he, Mr. Clark, did some work in connection with that accident and handled the Frank Busse estate and that Helen Collins also did some work in connection therewith; that Mrs. Collins took care of paying bills and whenever Mrs. Busse came to Mr. Clark's office Mrs. Collins was with her and Mrs. Busse told Clark to get in touch with Mrs. Collins and take up everything with her; that in the summer preceding Mrs. Busse's death, which occurred on May 21, 1944, Mrs. Collins and Mrs. Busse were in Clark's office and discussing the way that things were being handled. Mrs. Collins didn't like the absence of Mrs. Busse and the fact that she did not always hear from her and in that conversation Mrs. Busse said to Mrs.

Collins, "You are going to get your $5000.00, don't worry about it, of course I cannot pay you now, it will be paid as soon as 'The Elms' are sold." That prior to this time they had never discussed the amount that Mrs. Collins would get at the time "The Elms" were sold or what she was doing for her; that at the time of Mrs. Busse's death "The Elms" had not been sold; that shortly after Mr. Busse's death Mrs. Busse started to sell "The Elms" and was trying to sell this real estate shortly before she died so she could pay Mrs. Collins. Mrs. Busse was trying to get $15,000 or $16,000 for the property but was not anxious to sell at that price; that he, Clark, talked to her about reducing the price for the purpose of raising money to pay Mrs. Collins and Mrs. Busse stated she would take less because she wanted to pay off Mrs. Collins and be clear out of the thing; that he, Clark, was down to "The Elms" once and that he sent different people there to see Mrs. Collins who had the key and managed the property.

Upon cross-examination this witness stated that he knew Mrs. Collins took care of Mrs. Busse continuously after the death of Mr. Busse; that Mrs. Busse was not confined to her bed and would be away, leave Mrs. Collins alone and then come back; that outside the building where the Busses lived there were only two small cottages at "The Elms" and an old club-house which was closed up and not operated after Mr. Busse's death; that Mrs. Collins drove Mrs. Busse around in her, Mrs. Collins' car, and collected the rents of the two small cottages and took care of the buildings.

The foregoing is all the evidence in this record as abstracted except there was offered and admitted in evidence a tax receipt issued by the county treasurer of Kendall county showing certain 1942 real estate taxes amounting to $80.62 were paid on June 28, 1943, by Mrs. Frank Collins for Marie Busse. There was

also offered and admitted in evidence a certificate dated May 10, 1910, designated as a registered nurse certificate issued by the Illinois State Board to Nellie Sauber. Mr. Clark also identified the handwriting appearing on two envelopes as the handwriting of Mrs. Busse and the abstract shows that these two envelopes and also two letters were admitted in evidence. What these letters stated or contained does not appear from the abstract but reference is made to one of these letters in the argument of counsel and we have examined it as the original appears in the report of trial proceedings in the transcript of the record. It does not appear when this was written and in our opinion throws no light upon the issues involved herein.

■ ■ It is first contended by counsel for appellant that the trial court erred in permitting Clark to testify over their objection. They insist that the matter about which he testified came to his knowledge while he was acting as attorney for and the confidential adviser of Mrs. Busse and therefore all such matters were privileged. Counsel for both parties agree that the general rule is that where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications made in confidence by the client, are, at his instance, permanently protected from disclosure by himself or by his legal adviser except the protection be waived. Counsel also agree that the general rule is that where a communication between an attorney and client takes place in the presence of a third party such communication is not privileged. Counsel for appellee insist that there were no communications admitted in evidence which originated in the confidence that they would not be disclosed and that Mr. Clark is in the same position as any other witness who hears a conversation between two people and that his testimony is not incompetent simply because he is an attorney and the conversation occurred in his office. Counsel

for appellee also insist that communications made by a client to his attorney in the presence of the opposite party are not privileged and call our attention to the fact that at the time Mrs. Busse made the statements testified to by Clark, Mrs. Collins, the claimant, was present.

In 70 C. J. 433, sec. 583, the general rule is stated that there is no privilege as to a communication between attorney and client in the presence of a third person, not the agent of either party, and the presence of a confidential agent of the client at a conference between attorney and client does not destroy the privilege and in support of the statement that the communications privileged where the third party is an attorney from a foreign jurisdiction who is representing the client, they both having called for advice as to the law of the jurisdiction, the text cites *Dickerson v. Dickerson*, 322 Ill. 492. In this case it appeared that James T. Dickerson came to the law office of Moreland and Moreland at Galesburg upon two occasions and consulted with them about making deeds conveying his farm lands to certain parties. Mr. Dickerson was accompanied by an Oklahoma lawyer upon both occasions and as a result of these interviews three deeds were prepared, signed by Dickerson and left with the Morelands. After the death of Dickerson, suit was brought by his widow, in which she charged that these deeds were ineffective for want of delivery. Upon the hearing before the chancellor the Morelands testified as to what was said and done in their office upon the occasions when Dickerson consulted with them in connection with the preparation and execution of these deeds. In affirming the decree of the lower court which found that the deeds were legally delivered by Dickerson in his lifetime by giving them to Moreland and Moreland for the respective grantees, the Supreme Court held that the relationship between Dickerson and the More-

lands was a triple one. That in seeking legal advice the relation of attorney and client existed; that the Morelands then became Dickerson's scrivener and thereafter became depositaries or trustees for the purpose of receiving the deeds for the grantees and holding the same for them during Dickerson's lifetime and afterward recording them for their benefit. It was contended by counsel for the grantees that the communications between the Morelands and Dickerson were not privileged because they were made in the presence of a third person, the Oklahoma lawyer. In disposing of that contention the court said (p. 499): "The general rule is that where a communication between attorney and client takes place in the presence of a third party such communication is not privileged; but that rule does not apply to the present case, for the reason that the third person who was present was an attorney from Oklahoma who was acting in the premises for Dickerson and who together with Dickerson, applied to Moreland and Moreland for advice as to the Illinois law applicable to the making and delivery of voluntary conveyances, with which the Oklahoma attorney was not familiar." The court then went on to say that it was often a most difficult question for a court to determine whether or not a communication between attorney and client is privileged; that sometimes such communications are only temporarily privileged and that it sometimes happens that a portion of a transaction between an attorney and client is privileged and another portion is not and concluded (p. 502): "manifestly, while the relation between them (Dickerson and the Morelands) was intended to be confidential during the lifetime of Dickerson, it was not the intention of the parties that the instructions given to the Morelands by Dickerson, and the facts and circumstances attending the delivery of the deeds by Dickerson to the Morelands, should remain so after his death, and they were competent

witnesses to testify to such facts and circumstances and the instructions given to them by Dickerson."

*Foley v. Poschke,* 66 Ohio App. 227, 32 N. E. (2d) 858, was a suit brought by Foley, a private detective, to recover from Mrs. Poschke the balance which he claimed to be due him for services rendered Mrs. Poschke in connection with her action for divorce. George W. Spooner was one of the attorneys representing Mrs. Poschke in her divorce action. Upon the trial of the case of *Foley v. Poschke* in the municipal court, Mr. Spooner was called as a witness on behalf of Foley and was permitted to testify, over objection, to certain statements made to him by his client, Mrs. Poschke in the presence of the plaintiff. In the lower court the plaintiff recovered a judgment. The court of appeals, held the testimony of Mr. Spooner, the attorney, was improperly admitted in evidence and reversed the judgment of the Municipal Court. The Supreme Court of Ohio in *Foley v. Poschke,* 137 Ohio St. 593, 31 N. E. (2d) 845, in affirming the judgment of the court of appeals, said: "that plaintiff may have been present during most of the conversations between Mr. Spooner and the defendant would make no difference. The general rule that communications between an attorney and his client in the presence of a third person are not privileged, does not apply when such third person is the agent of either the client or the attorney. *Bowers v. State,* 29 Ohio St. 542; 70 Corpus Juris, 433, 435, sec. 583; 8 Wigmore on Evidence, 3 Ed., 602; section 2311." The court then quotes from *Dickerson v. Dickerson,* 322 Ill. 492, at page 500, to the effect that it is essential to the ends of justice that clients should be safe in confiding to their counsel the most secret facts and to receive advice without the perils of publicity and that disclosures made to this end should be as secret and inviolable as if the facts had remained in the knowledge of the client alone.

The testimony of a witness as to conversations with a party to an action cannot be excluded merely on the ground that the witness is an attorney at law and that the communication was confidential unless it also appears that he was the attorney for the party, and that the communications were made in the course of such professional conduct. (28 R. C. L. 553, § 143.) The general rule is that an attorney is not permitted, and cannot be compelled to testify as to communications made to him in his professional character by his client unless his client consents. In other words an attorney is not a competent witness as to facts communicated to him by his client. Such communications are privileged on the ground of public policy. It is therefore immaterial that the attorney, called as a witness, is willing to disclose them and as the privilege applies to the communication it is immaterial whether the client is or is not a party to the action in which the questions arise. (28 R. C. L. 548, § 138.) This protection, given by the law to communications made during the relationship of attorney and client, is perpetual and does not cease by the death of the client. (28 R. C. L. 570, § 160.)

In order that the rule as to privileged communications between an attorney and his client or its reason apply, it is inherently necessary that the communication made by the client to the attorney be confidential. Therefore if the client chooses to make or receive his communication in the presence of third persons, it ceases to be confidential and is not entitled to the protection afforded by the rule. The fact that the communication is made in the presence of a third person is inconsistent with the notion that the communication was ever intended to be confidential. It has been held that no reason of necessity requires any witness, save an interpreter, should ever be present at a consultation between the client and his attorney but such a rule is too narrow because it would exclude

the presence of the client's agents, who, in some instances at least must be present at conferences between attorney and client in order that counsel may obtain accurate information of the facts. (28 R. C. L. 561–2, § 151.) Communications between attorney and client are privileged from disclosure and it is not material whether the evidence relates to what was said by the attorney, or what was said by the client, in their private conversation on the business in which the attorney was professionally employed. The statements of each to the other must be considered as privileged communications. (28 R. C. L. 558, sec. 147.) It is sometimes said that all communications between counsel and client are privileged but this is too general and is inaccurate. They must relate to the business and interest of the client and extends only to communications connected with the business in which the attorney has been retained and not to extraneous matters. (28 R. C. L. 559, § 149.)

In the instant case Roger Clark was the attorney for appellant's intestate, Marie Busse, from 1933 until the date of her death which occurred on May 21, 1944, a period of eleven years. Her husband, Frank Busse, died September 28, 1942 and she was the administrator of his estate and Clark was her attorney as such administrator. Mr. Clark testified that Frank Busse was killed in an accident and he did some work in connection with that accident and handled the Frank Busse estate and that Helen Collins also did some work in connection with it; that about the time of Frank Busse's death, Marie Busse and Mrs. Collins came to his office and that was the first time he remembered of Mrs. Collins being there and it was the first time he met her; that Mrs. Collins was handling "The Elms" and whenever Mrs. Busse came to his office thereafter Mrs. Collins was with her and Mrs. Busse told Clark to get in touch with Mrs. Collins and take up everything with her; that in the summer of 1943,

Mrs. Busse and Mrs. Collins were in his office again and Mrs. Busse said to Mrs. Collins that she, Mrs. Collins, was going to get her $5,000; that Mrs. Collins was not to worry about it, although Mrs. Busse said she couldn't pay it then but it would be paid as soon as "The Elms" was sold. What Mrs. Busse had said just before making this statement or what Mrs. Collins had said or what Clark said is not shown except Clark's conclusion that Mrs. Collins did not like the way Mrs. Busse absented herself from her home and that when away Mrs. Collins did not always hear from her. Mr. Clark's testimony is further that he talked to his client, Mrs. Busse, about reducing the price she was asking for "The Elms" and Mrs. Busse told him she would take less than she had been asking because she wanted to pay off Mrs. Collins.

Counsel for appellee insist that when Mrs. Busse stated to Mrs. Collins that she would get her $5,000 and for her not to worry about it, that this statement by her was not a communication to Roger Clark but an admission of indebtedness made by the client of Roger Clark in her attorney's presence and that when Marie Busse said "it (meaning the $5000.00) would be paid as soon as 'The Elms' are sold," she, Mrs. Busse, was informing Roger Clark that Helen Collins was to be paid this sum and that these were deliberate admissions upon the part of Mrs. Busse of her indebtedness to Mrs. Collins and cite *Oard v. Dolan,* 320 Ill. 371, as supporting their contention. This was a suit to set aside a conveyance of a parcel of real estate on the ground that the grantor did not have sufficient mental capacity to make a deed and that it was obtained by the undue influence of the grantee. The attorney who prepared the deed at the request of the grantor testified as to what was said and done by the grantors at the time the deed and a contemporaneous contract was executed by the grantor and the grantee. The court held that the conversations and circum-

stances testified to by him were not confidential or privileged because they took place in the presence of the grantee. "Statements," said the court, "made by a grantor in the presence of the opposite party and his attorney are not of such confidential character as the client may insist shall not be disclosed by the attorney and solicitor." The facts in the instant case distinguish it from the *Oard* case. The attorney's testimony in the *Oard* case was admissible because he was acting as scrivener and the grantee named in the conveyance which he prepared was present.

In our opinion Roger Clark was an incompetent witness as to any communication to him made by his client, Marie Busse. The presence of Mrs. Collins, the claimant here, in his office, at the time these statements were made did not take those communications out of the privileged communication rule. Mrs. Collins was there as an agent, servant or employee of Mrs. Busse and under the authorities above referred to the trial court erred in permitting Clark to testify to those communications.

If, however, Clark was a competent witness to testify we think his testimony falls far short of establishing appellee's claim. In *Pure Torpedo Corp. v. Nation*, 327 Ill. App. 28, it is stated that an account stated is an agreement between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance. In *Pope County State Bank v. U. G. I. Contracting Co.*, 265 Ill. App. 420, it is said that an action at law on an account stated lies only where there have been transactions previous to the statement of the account which created the relationship of debtor and creditor. The evidence in the instant case is that the statement of Mrs. Busse to the effect that Mrs. Collins would get her $5,000 was

made by Mrs. Busse in the summer of 1943, and that prior to that time they had never discussed any amount which Mrs. Collins was to get when "The Elms" was sold. It does not follow that because Mrs. Busse said that Mrs. Collins was going to get $5,000 and that it would be paid that she was indebted to her for services. Such a statement would be consistent with a promise upon the part of Mrs. Busse to make her a gift. It is singular that, if in the summer of 1943, Mrs. Busse was then indebted to Mrs. Collins and Mrs. Busse and her lawyer and Mrs. Collins were discussing the payment thereof that something more was not said by some one of the three who were present on that occasion than appears in this record.

We recognize the difficulty of establishing a claim of this character but the burden of proving it, as alleged, rested upon Mrs. Collins. It was incumbent upon her to substantiate her claim with clear and convincing evidence. All the evidence shows is that claimant did render some services to the deceased but no agreement upon the part of decedent to pay claimant $5,000 therefor can be even inferred from this record. The admissions made by a person since dead, are not very convincing and other than those admissions the court must conjecture many things before it can be said that appellee has established her claim. Claims against deceased persons must be scrutinized with care. (*In re Estate of Teehan*, 287 Ill. App. 58.)

The judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*