The STATE of North Dakota, Plaintiff and Respondent,

v.

Wayne POWELL, Defendant and Appellant.

No. Cr. 261.

Supreme Court of North Dakota.

Dec. 13, 1955.

Wm. L. Paulson, Valley City, for defendant and appellant.

Paul Benson, Atty. Gen., Leslie R. Burgum, State's Attorney, D. W. Butts, Asst. State's Atty., Jamestown, for the State.

SATHRE, Judge.

This is a criminal action. The defendant was charged with the crime of Sodomy under Section 12–2207, NDRC 1943 committed on the person of a boy 11 years of age. The crime is alleged to have been

committed in the City of Jamestown on the 29th day of August 1953. The case was tried to a court and a jury in the district court of Stutsman County and the jury returned a verdict of guilty. The case is here on appeal from the judgment and sentence.

The victim of the crime, Robert Ulrich was a boy 11 years of age at the time of the alleged commission of the crime. He had a paper route in the City of Jamestown delivering the Jamestown Sun. The defendant was on his delivery route. The defendant resided on the second floor in what is know as the Duffy Apartments. In the afternoon of August 29th, Robert was delivering papers. He went to the Duffy Apartments about 10 minutes to three, walked up the stairway and threw the paper up and in front of the entrance of the defendant's living quarters. The defendant came to the door, picked up the paper and asked the boy if he threw the paper up. The boy said he did and that he wanted to find out if he the defendant was at home because he intended to collect for the paper. He then went up to the defendant's room and the defendant asked him how much he owed him and he said 30 cents. The defendant then went into his bedroom and from there into the kitchen looking for his wallet and after awhile he came back and handed the boy a dollar. The boy said he did not have that much coming. The defendant then asked him: "are you going to the ball game", to which the boy replied: "I haven't the money"; the defendant then said you will be able to go now; Robert said: "I shouldn't take it", but finally accepted the dollar. The defendant then told the boy to come over and sit down on the davenport and the defendant sat down beside him. He stated that the defendant had on no shirt, no shoes or stockings but only his shorts; that the defendant then had Robert put down his pants half ways to his knees. The defendant then attempted an act of sodomy upon him, but Robert pushed defendant away, pulled up his pants, and was leaving the apartment; that the defendant then told him to raise his right hand and to promise not to tell anybody what had happened; that he, Robert, then went on his way, delivered one or two papers and then went home, threw his paper bag on the davenport and finally began to cry. After some coaxing by his mother he told her what had happened. The mother then called her husband who came home and they went to the state's attorney's office and reported what had happened. The defendant admitted that Robert delivered the paper in the afternoon at about 3 o'clock as stated in his testimony and that the defendant paid the boy one dollar. He denied the rest of the boy's story. He said that when Robert Ulrich delivered the paper that afternoon, he, the defendant had shoes and socks on, shorts, undershirt and trousers. The defendant's daughter was a witness in his behalf and she testified that she was at home during that time, and that she was somewhat indisposed and that she went to the bathroom several times. The defendant's son-in-law also testified in behalf of the defendant and he stated that he came to the defendant's apartment at about 1:30 in the afternoon and that he was there assisting his wife who was not feeling well; that thereafter he went down town and had a hair cut and came back about 2:30 p. m. Both defendant's daughter and his son-in-law testified that they had not seen the boy in the apartment that afternoon.

The case was submitted to the jury, and the jury returned a verdict finding the defendant guilty as charged in the information. The defendant thereafter made a motion for a new trial upon the following grounds:

1. That the verdict is contrary to law and is not supported by the evidence. That there is no corroborating evidence of the commission of the crime, and that the sole evidence of the commission of the crime was given by the complaining witness who was an accomplice.

2. The high improbability that this act could have taken place at the

time and place alleged and under the circumstances in that there were other persons present in and about the apartment when the act was alleged to have taken place.

3. Irregularities during the trial by the misconduct of the state's attorney which was prejudicial to the defendant, and which prevented him from having a fair trial.

The motion was denied and the defendant appealed from the order denying the motion and from the judgment of conviction.

The defendant contends that the complaining witness Robert Ulrich was an accomplice in that he consented to the act charged and therefore a conviction could not be sustained by or on his own testimony without corroboration under Section 29-2114, NDRC 1943. The trial court submitted to the jury the question of whether or not Robert Ulrich was an accomplice. We quote from the Court's instructions:

"An accomplice is defined as 'An associate in crime; one who cooperates, aids or assists in the committing of it.' It is for you to determine from the testimony in this case whether or not the witness Robert Ulrich was an accomplice in the commission of the alleged crime. If Ulrich was not an accomplice, then the law requiring corroboration of the testimony of an accomplice does not apply. If you find such crime was committed and that Robert Ulrich was an accomplice in committing it, his testimony must be corroborated before you can find the defendant guilty."

The trial court instructed further on the question of whether or not the complaining Robert Ulrich was an accomplice:

"If you find there was an act of sodomy, if in the commission of the act, Robert Ulrich was the victim of fraud or undue influence or lack of knowledge of the act so that he did not act voluntarily and join in the commission of the act with the same intent that the accused did, then Robert Ulrich should not be regarded as an accomplice."

The question whether in an offense of this type in which there are two or more participants, one of them is an accomplice, is a question of fact to be determined by the jury. State v. Kellar, 8 N.D. 563, 80 N.W. 476. See also Dutzler v. State, 41 Ariz. 436, 19 P.2d 326; State v. Warner, 79 Utah 510, 13 P.2d 317.

The defendant next contends that Robert Ulrich testified definitely that he took down his pants and voluntarily permitted the defendant to do the act complained of. That is not the testimony of Robert Ulrich. According to his testimony whatever he did was at the request of the defendant. It cannot be said therefore that he voluntarily submitted to the alleged improper advances of the defendant. Robert Ulrich testified that when he came into the apartment there was a large clock on a table near the door and that he looked at the clock and that it showed 10 minutes to three. The defendant admitted that the time was 10 minutes to three by the clock when Robert Ulrich came to the apartment. He admitted that he went to look for change and that he asked Robert if he were going to the ball game, and that he gave him one dollar, and that he told him to keep it. So far therefore the testimony of the defendant is in agreement with the testimony of Robert Ulrich.

The defendant next argues that it is highly improbable that this act could have taken place at the time and place testified to by Robert Ulrich for the reason that the defendant's daughter and his son-in-law testified that they were in the apartment during the time when the alleged act had taken place. It is of course true that it is improbable that this act could have taken place in the apartment while the defendant's daughter and son-in-law were present and were in and out of the rooms in the apartment. However it is also improbable that

a boy who at the time was only 11 years old could have invented a scheme to charge the defendant with a felony of such nature. He would know that he would have to disclose the whole affair to the authorities to his own shame and embarrassment. It is highly improbable that a boy of his age would resort to such reprehensible conduct. The testimony of the defendant and his witnesses was in direct conflict with the testimony of Robert Ulrich. The issue thus created was submitted to the jury and the jury evidently believed the story of Robert Ulrich.

The defendant next contends that the state's attorney was guilty of misconduct to the prejudice of the defendant because of certain questions asked of the complaining witness Robert Ulrich and also because of cross examination of the defendant.

On direct examination the complaining witness Robert Ulrich testified to what the defendant did to him while the two were sitting on the davenport. He was then asked:

"Q. Then what happened, what did he do?

"A. He just got up and I got—He just sat up and I got up and pulled up my pants and buckled them."

Later the state's attorney asked Robert Ulrich practically the same question as to what the defendant did after the act complained of.

The question was objected to as repetitious. The objection was sustained. This question was assigned as prejudicial to the rights of the defendant. We fail to see how this question could be prejudicial to the defendant. It was objected to by defendant's counsel and the objection was sustained.

On direct examination the defendant had testified in detail as to the exact time when Robert Ulrich came to his apartment, that is at 10 minutes to three; that his son-in-law came to his apartment at 1:30 p. m. and that during the time the alleged offense was committed his daughter was in the bathroom and in the bedroom of the apartment. On cross examination he was asked this question:

"Isn't it true Mr. Powell that after this matter came up that this time element had to be arranged so that you could account for every minute and defeat the testimony of this boy that was here on the stand."

This question was objected to on the grounds that it was highly prejudicial; incompetent, irrelevant and immaterial. The objection was overruled and the defendant answered as follows:

"Yes because the time element would be a deciding factor for the case."

We fail to see that the question asked and his answer thereto could be prejudicial to the defendant. The defendant also objected to the following questions asked Robert Ulrich by the state's attorney:

"Q. What did you do when you arrived home?

"A. Well I went into the house and I threw my paper bag on the davenport and then I told mother.

"Q. Did you cry Robert?

"A. Yes after a little while."

Robert Ulrich was not permitted to tell what he told his mother or what he told his father. We fail to see that these questions asked of Robert Ulrich could be prejudicial to the defendant. Several other questions of similar nature were asked Robert Ulrich and objected to as prejudicial, but it is unnecessary to repeat them here except to say that we fail to see where they could in any way prejudice the rights of the defendant.

In his supplemental brief the defendant took exception to certain portions of the Judge's instructions to the jury. In this connection the record shows that the following proceedings were had. After the close of the testimony and after both sides had made their arguments the following dis-

cussion was had between court and counsel:

"The Court: You gentlemen look over these instructions which the court intends to give. I would like to have you consider them during the recess, and if you have any exceptions, I would like to have them noted; and if you have any additions or alterations, I would like to have your suggestions there too. (Court admonishes jury.)

The Court: We will have a short recess at this time. (Recess taken.) (The following proceedings were had without the jury.)

"The Court: What do you say to the instructions?

"Mr. Burgum: Satisfactory to the State.

"The Court: And you, Mr. Paulson?

"Mr. Paulson: I think so.

Section 29–2133, NDRC 1943 provides as follows:

"The court may submit to the counsel in the case for examination the written instructions which it proposes to give to the jurors, and may require such counsel, after a reasonable examination thereof, to designate such parts thereof as he may deem objectionable, and thereupon such counsel must designate such parts of the instructions as he may deem improper, and thereafter only the parts as designated shall be deemed excepted to, or subject to exception."

As pointed out both sides were given copies of the instructions which the court proposed to give and they had an opportunity to examine them. After such examination by counsel the court inquired if the counsel had any additions or alterations, and if they did he would like to have their suggestions. The record shows the state's attorney considered the instructions satisfactory to the state and likewise the counsel for the defendant stated, "I think so", which must be construed to mean that he was satisfied with the instructions. We think therefore that upon this record the counsel for the defendant was foreclosed from making any exceptions to the instructions.

The record does not establish that any errors of law were committed at the trial. A careful reading of the transcript demonstrates that the trial court was eminently fair to the defendant, and in all rulings consistently resolved all doubt in favor of the defendant.

There is a sharp conflict between the testimony of the state's witness, Robert Ulrich, and the testimony of the defendant and his witnesses. There was therefore an issue of fact which the trial court properly submitted to the jury. The jury heard and saw the defendant and his witnesses and undoubtedly gave proper weight to their testimony. The jury also saw the complaining witness, Robert Ulrich, observed his general demeanor and heard and weighed the reasonableness of his testimony as they had a right to do. They undoubtedly took into consideration his age, physical appearance, his degree of intelligence and his general attitude while on the witness stand. They returned a verdict finding the defendant guilty. We think the evidence is sufficient to support the verdict.

Finding no error in the record the judgment is affirmed.

BURKE, C. J., and SATHRE, MORRIS, GRIMSON and JOHNSON, JJ., concur.