**STATE of North Dakota, Plaintiff and Respondent,**

v.

**Arthur Robinson HENDERSON, Defendant and Appellant.**

**Cr. 355.**

Supreme Court of North Dakota.

Jan. 11, 1968.

Rehearing Denied March 1, 1968.

William R. Mills, Bismarck, for defendant and appellant.

Helgi Johanneson, Atty. Gen., and Donald R. Holloway, Special Asst. Atty. Gen., Bismarck, Richard B. Thomas, State's Atty., Minot, and Glenn Dill, Asst. State's Atty., Kenmare, for plaintiff and respondent.

PAULSON, Judge (on reassignment).

This is an appeal from a judgment rendered on a verdict against the appellant, Arthur Robinson Henderson, who was charged with violating Section 10–04–10 of the North Dakota Century Code, and from an order denying a motion in arrest of judgment.

The original information was amended just prior to trial, and Mr. Henderson, without objection, was arraigned on the amended information. The latter information charged the appellant with "offering for sale or selling securities without registering with the securities commissioner as a dealer or salesman", the specific act complained of being the selling of a $1000 note to Alice Rodin on September 25, 1965.

The salient facts are that, during the period specified in the information, March 10, 1965, to November 1, 1965, the appellant was employed by Heartland International, Inc., a North Dakota corporation, to assist in raising money to be used by the corporation to purchase a Minot radio station from Heartland's parent corporation, the People's Radio Association of Denver, Colorado. During this period Mr. Henderson was not licensed with the North Dakota Securities Commissioner either as a salesman or as a

dealer. The State proved, without contradiction, the sale of a note to the woman named in the amended information, and several other sales as well. The State offered further proof, through the testimony of an attorney who had advised Mr. Henderson, that Mr. Henderson had knowledge that the sale of the notes in question would require a North Dakota salesman's or dealer's license.

There are two preliminary matters to be decided prior to consideration of the basic issues raised by Mr. Henderson's specifications of error. Both are in regard to the motion in arrest of judgment.

The State claims that this court has no jurisdiction of an appeal from the denial of the motion in arrest of judgment because the oral decision on the motion was rendered in open court on November 23, 1966, and the notice of appeal from that decision was not served until April 4, 1967, which period was not within the sixty-day limit set forth in Section 29–28–08, N.D.C.C.

The State's contention cannot be upheld. Section 29–28–08, N.D.C.C., requires that an appeal be "from an order". This court stated in State v. New, 75 N.D. 433, 28 N.W.2d 522, in paragraph 2 of the syllabus:

"An oral denial of a motion does not constitute an *order* denying the motion. An order *must be in writing* and *must be signed* by the judge." [Emphasis supplied.]

Accord, State v. Wicks, 68 N.D. 1, 276 N.W. 690.

■ The rationale behind these decisions is clear; their purpose is to foster certainty and concreteness in the record to be reviewed on appeal. The written order denying the motion was filed with the clerk of court on March 12, 1967, and the notice of appeal from that order was served on April 4, 1967, and filed on April 13, 1967, or well within the sixty-day period. This court has jurisdiction of the appeal from

the order, and the motion to dismiss that appeal is denied.

Henderson claims that the judgment entered against him is void because the order denying the motion in arrest of judgment was not entered prior to the rendition of the judgment. To support this contention, Henderson relies on Section 29–25–04, N.D. C.C., which reads as follows:

"A motion in arrest of a judgment shall be heard and decided before judgment is entered and after reasonable notice has been given to the state's attorney by the defendant."

■ Assuming, without deciding, that the provision of the foregoing section is mandatory, we conclude that it has been complied with by the court's oral decision on the motion. Section 29–25–04 does not require a written order to be entered prior to judgment, but only that the motion "be heard and decided before judgment is entered."

This provision is for the protection of the defendant, in that the granting of the motion would preclude the entry of a judgment against him. An oral decision on the motion sufficiently protects and informs the defendant, and does not affect his right to appeal from the written order when it is finally entered.

Mr. Henderson's remaining specifications of error can be grouped under four main categories. We will first consider the claimed error in denying the motion in arrest of judgment.

This motion was based on three grounds: that the information did not charge a public offense; that the information charges more than one offense; and that the trial court did not have jurisdiction of the offense charged.

The information charged Henderson with "offering for sale or selling *securities*" in that he sold a note to one Alice Rodin. The language of Section 10–04–10, N.D. C.C., also refers to "securities". The es-

sence of Henderson's argument in this regard is that the sale of a "note" is not the sale of "securities". This argument is not well taken. Section 1–01–35, N.D.C.C., provides:

"Words used in the singular number include the plural and words used in the plural number include the singular, except when a contrary intention plainly appears."

■ The contrary intention does not plainly appear in Section 10–04–10. The gist of the offense is selling, in a nonexempt transaction, without being registered. That offense is committed whether one security or many are sold. Further, the State proved, without contraversion, the sale, by Henderson, of several other notes, thus fulfilling Henderson's contention that the "sale of securities" must be shown. The error in the information, if such it is assumed to be, is at best a technical error and did not affect any substantial right of Henderson and, therefore, it will be disregarded by this court. Sec. 29–28–26, N.D.C.C.

The second ground stated in the motion in arrest of judgment is that the information charges more than one offense. The contention is that the charge comprises four offenses: selling securities without registering as a salesman; selling securities without registering as a dealer; offering to sell securities without registering as a salesman; and offering to sell securities without registering as a dealer. This contention cannot be sustained.

■ Section 29–11–10, N.D.C.C., sets out the method of charging a criminal offense in North Dakota. It states, in subsection 2, that a valid charge can be made:

"By stating so much of the definition of the offense or offenses in terms of the statute or statutes defining the offense or offenses, or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of the offense or offenses which are intended to be charged."

This subsection has been complied with. The penalty for selling is the same as the penalty for offering to sell, and the penalty does not change if one is found to have done either when acting as a dealer or as a salesman.

In State v. Gopher Tire & Rubber Co., 146 Minn. 52, 177 N.W. 937, 939 (1920), the court stated:

"The reason for the rule against duplicity is that the defendant ought not to be embarrassed or confused in making his defense by the necessity of meeting several distinct accusations founded on disconnected acts and requiring the production of evidence of a different nature."

The reasons stated have not arisen in this case. Henderson was not embarrassed or confused in preparing his defense by having to meet several accusations. Proof on Henderson's part that he was registered either as a dealer or as a salesman would have required an acquittal. The proof was uncontradicted that he was neither. The State's proof that he made the sale charged in the information, and several others, also was uncontroverted.

 Further, as this court said in State v. Simpson, 78 N.D. 571, 50 N.W.2d 661, 663:

"The name given or attempted to be given in an information is not controlling as a statement of the crime charged. When the facts, acts, and circumstances are set forth with sufficient certainty, the failure to properly name the offense is not fatal." [Syllabus by the court.]

The act charged in the information, when considered in conjunction with the crime charged therein, was of sufficient certainty to apprise Henderson what the State would attempt to prove, and, on this basis, the trial court did not err in denying the motion in arrest of judgment.

The third and final ground stated by Henderson in his motion in arrest of judgment is that the trial court did not have jurisdiction of the offense charged. This ground is based on the contention that the particular statute claimed to have been violated by Henderson is not consistent with due process of law, in that it does not with reasonable clarity describe the prohibited conduct.

In United States ex rel. Shott v. Tehan, 365 F.2d 191, at page 198 (6th Cir. 1966), a case involving a violation of the Ohio Securities Act, the court stated:

"Appellant further attacks the Ohio Securities Act by asserting that it violates the Fourteenth Amendment because the Act, as applied, is unconstitutionally vague and indefinite. * * *

* * * * * *

"The Ohio Securities Act, prohibiting the sale of securities which are not otherwise exempt, forewarns of its reach and coverage. The language sufficiently conveys a definite warning as to the proscribed conduct, when measured by common understanding and commercial practice. * * *

"The Ohio Securities Act makes it plain that a security must be sold through a licensed dealer unless the security or the transaction is exempt. The burden is upon the issuer to determine initially whether a sale or transaction is exempt. The exemption of promissory notes not offered directly or indirectly for sale to the public is not unconstitutionally vague. * * * The statute clearly sets forth the conduct proscribed."

Section 10-04-10, N.D.C.C., likewise conveys a definite warning as to the proscribed conduct, and provides:

"No dealer or salesman shall offer for sale or sell any securities within or from this state, except in transactions exempt under section 10-04-06, unless he is registered as a dealer or salesman pursuant to the provisions of this section. * * *"

The United States Supreme Court in United States v. National Dairy Products Corp., 372 U.S. 29, at page 32, 83 S.Ct. 594, at page 598, 9 L.Ed.2d 561 (1963), has set forth the standards for determining whether a legislative enactment which attempts to proscribe certain conduct is void for vagueness, as follows:

"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed."

■ We hold that Section 10–04–10, N. D.C.C., when construed by the standards of commercial practice and common understanding, sets forth with reasonable clarity the proscribed conduct, and can be understood by the reasonable man. Therefore, Henderson was tried under a statute which is in accordance with due process of law, and the trial court had the necessary jurisdiction.

■ The second category under which Henderson's specifications of error can be grouped is that the court erred in giving, or failing to give, certain instructions to the jury. The trial court submitted written instructions to both counsel and requested that they examine them and present any exceptions which they might have. Henderson's trial counsel took no exceptions to these proposed instructions. Henderson is therefore foreclosed under Section 29–21–33, N.D.C.C., from having any error in the instructions given passed upon by this court. State v. Carroll (N.D.), 123 N.W.2d 659; State v. Alfstad (N.D.), 98 N.W.2d 371; State v. Powell (N.D.), 73 N.W.2d 777.

The third grouping of specifications of error comes under the heading of an alleged violation of the attorney-client confidential relationship. The alleged inadmissible evidence was supposed to have arisen during the following interrogation of the witness Meschke by the trial judge:

"THE COURT: Mr. Meschke, did you ever tell Mr. Henderson that he couldn't sell these notes to the public without being registered as a dealer or salesman?

"A Yes sir, yes sir Judge, I believe that I did on April 7th when Mr. Henderson and Mr. Helgeson conferred with me the subject of notes was discussed at that meeting and the only in—and my answer was 'negative.' The only transaction which they proposed which I approved of was the transfer of real estate from an individual to the corporation in exchange for notes.

"THE COURT: I have no further questions.

"MR. THOMAS: Was that April of '65 that he had the conversation?

"A Yes sir.

"MR. STEVENS: I have one question. I take it from your answer that the provisions of such, Section 10–04–05, Subdivision 7, Promissory Notes as described there as being exempt securities was discussed?

"A Yes sir.

"MR. STEVENS: That is all."

■ It is to be noted that at no time during this colloquy did Henderson's trial attorney object to the questions being asked by the judge. "A rule of evidence not invoked is ordinarily waived." State v. Dietz (N.D.), 115 N.W.2d 1, 7.

Section 29–21–12, N.D.C.C., states:

"The rules of evidence in civil cases are applicable also to criminal cases, except as otherwise provided in this title."

In Grenz v. Werre (N.D.), 129 N.W.2d 681, 687, the court stated:

"It is elementary that an assignment of error in the admission of evidence will not be reviewed by this court unless proper and timely objection is made to

the admissibility thereof, and that the admissibility of such evidence cannot be challenged for the first time upon appeal."

As has been pointed out, Henderson's attorney did not challenge the admissibility of this evidence upon the trial, and is now attempting to raise the issue for the first time upon appeal.

■ The contention in Henderson's brief that objecting to the admission of the alleged confidential communication would place Henderson in an untenable position has been considered by this court and rejected. We hold that any possible attorney-client privilege has been waived by Henderson for failure to object at the trial.

The final category of Henderson's specifications of error consists of a number of claimed errors wherein the trial court either overruled or sustained objections by the prosecution or the defense.

■ A good deal of the claimed error occurring under this heading consists of the introduction of evidence by the State concerning the nonpayment of the notes which Henderson had sold, and the places of deposit of the money received from the sale of these notes. While it is true that this type of testimony was not strictly relevant to the offense charged, the trial court's instructions to the jury were clear and we hold that this type of evidence did not prejudice Henderson's rights.

■ Henderson further objects to the introduction of testimony tending to place emphasis on the religious background of the enterprise in which he was involved. This evidence, again, was not strictly relevant to the charge; however, it was part of the factual background of the case and, as such, permitted the triers of fact to better understand the charge by putting it in the proper context. In view of the concise instructions given to the jury, we conclude that this evidence (of the religious background of the enterprise) did not prejudicially harm Henderson.

■ Henderson asserts as error the refusal to admit a securities license which had been issued to him by the North Dakota Securities Commissioner. The license had expired, and, furthermore, had been issued to Henderson as a salesman for People's Radio Association, a business entity with which, during the time specified in the information, Henderson no longer was associated. The foregoing makes it abundantly clear that the securities license was completely irrelevant to the issues in the case at bar.

■ Mr. Henderson claims error in that one of the witnesses, Chester Fossum, whose name was endorsed on the amended information, was not called by the State. In his brief, Henderson makes much of what the testimony of Mr. Fossum would have been, had he been called. Near the close of the trial, Henderson's attorney asked if Mr. Fossum was in the court room and the prosecution's answer was that he was not. Following this, there was a discussion at the bench, which is not in the record before us, after which the defendant rested. Section 29–01–06, N.D.C.C., sets out the various rights of the defendant, including the following:

"To have the process of the court to compel the attendance of witnesses in his behalf; * * *"

If Henderson felt that the testimony of Chester Fossum was of prime importance to his case he could have had issued a subpoena compelling his attendance. This court refuses to speculate on Henderson's reasons for not doing so. In our adversary system if a witness is necessary to a proper presentation of a defendant's case then the defendant should see that the witness is called. State v. Marmon, 154 N.W.2d 55 (N.D.1967).

■ Mr. Henderson, although again no objection was made to the arguments at the trial, urges that he was prejudiced by remarks of counsel for the prosecution made in the opening and closing summations to

the jury. Those remarks included the use of the words "pray" and "prey", as a play upon the initials of the People's Radio Association, that is, PRA; together with a reference to Henderson as "Father Divine". The control of the scope of counsel's opening and closing arguments is a matter left largely to the judicial discretion of the trial court and this exercise of discretion will not be reversed by this court unless a clear abuse of discretion is shown. State v. Loyland (N.D.), 149 N.W.2d 713. We hold that there has been no such clear abuse of discretion in the instant case.

■ Henderson presents several other specifications of error which this court has carefully reviewed. We find that these specifications are either without merit or present only technical errors which this court must disregard in light of Section 29–28–26, N.D.C.C.

Our review of the record having shown no error prejudicial to Henderson's rights, we hold that the judgment and the order denying the motion in arrest of judgment are affirmed.

TEIGEN, C. J., and STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.

On Rehearing.

PAULSON, Judge.

The appellant has petitioned for a rehearing in this case, asserting that this court overlooked certain points in determining that the attorney-client privilege had not been breached by the testimony of the witness Meschke. Appellant bases his assertions primarily on portions of two North Dakota statutes. Section 27–13–01 of the North Dakota Century Code states in pertinent part:

"Every attorney and counselor at law shall:

* * * * * *

"4. Maintain inviolate the confidence, and at any peril to himself, preserve the secret, of his client * * *."

and Section 31–01–06, N.D.C.C., reads:

" A person cannot be examined as a witness in the following cases:

"1. An attorney, without the consent of his client, cannot be examined as to any communication made by the client to him, nor as to his advice given thereon in the course of professional employment * * *."

We will comment on these two statutes in the order above presented. Assuming for the purposes of argument that Section 27–13–01, N.D.C.C., does not allow an attorney to testify concerning his client's secret, regardless of waiver on the part of the client, we are of the opinion on the basis of the record before us, that no "secret" is involved here. The answer of the witness Meschke to the question by the court (which is set out in the principal opinion) clearly shows the non-confidentiality of the statement made to Mr. Henderson.

"In order that the rule as to privileged communications between an attorney and his client or its reason apply, it is inherently necessary that the communication made by the client to the attorney be confidential. Therefore if the client chooses to make or receive his communication in the presence of third persons, it ceases to be confidential and is not entitled to the protection afforded by the rule." [In re Busse's Estate, 332 Ill.App. 258, 75 N.E.2d 36.]

And see La Moore v. United States, 180 F.2d 49, 12 Alaska 556 (9th Cir. 1950).

■ Although the foregoing answers the contention of the appellant based upon Section 27–13–01(4), N.D.C.C., we do not retreat from our position, as taken in the

principal opinion, that failure to object to the presentation of testimony by an attorney regarding a communication to or from a client waives the attorney-client privilege. Weisser v. Preszler, 62 N.D. 75, 241 N.W. 505 (1932); La Moore v. United States, supra. The soundness of this holding is pointed out by the situation presented in this case. Had the appellant objected to the testimony of the witness Meschke, the State would have been allowed to obviate the objection by an offer of proof concerning (1) the non-confidentiality of the communication and (2) the nonexistence of an attorney-client relationship. In contravention of this offer of proof, appellant could have offered testimony that the presence of Mr. Helgeson at the conference in which the alleged privileged communications took place was necessary to their efficacy, and, further, that a bona fide attorney-client relationship did exist. As with any claimed error presented for the first time on appeal, this court is faced, as a general rule, with an inadequate record on which to render a decision. However, in this case, we are able to determine from the record that the testimony given by the witness Meschke was not first uttered in a confidential setting, because of the presence of Mr. Helgeson.

Appellant's argument in regard to Section 31–01–06(1), N.D.C.C., is that an attorney can only be examined with the consent of the client, and that the consent can only be given in two ways, which are: (1) by express consent, and (2) under the terms of Section 31–01–07, N.D.C.C.

Section 31–01–07 provides:

"If a person testifies as a witness as to any subject which comes within the protection of any of the provisions of the first three subsections of section 31–01–06, he shall be deemed to have consented to the examination of an attorney, clergyman, priest, physician, or surgeon on the same subject matter."

■■■■ Appellant claims this method of consenting to testimony by an attorney is exclusive. That is, that the legislature provided for this method and intended to provide for no other. Appellant, of course, negates that argument in his own petition for rehearing when he states: "The client, of course, can specifically give consent to the testimony." Be that as it may, appellant misconstrues the intent of the legislature in enacting Section 31–01–07, N.D. C.C. The obvious intent was to prevent the several privileges set out in Section 31–01–06, N.D.C.C., from being used as a sword instead of a shield [Steen v. First National Bank, 298 F. 36 (8th Cir. 1924)]; that is, to prevent the claimant of the privilege from testifying as to his version of the communications and then, by claiming the privilege, refusing to allow any testimony which could possibly rebut his version. In this regard, see Steen v. First National Bank, supra; Swanson v. Domning, 251 Minn. 110, 86 N.W.2d 716. The legislature did not intend, by the enactment of Section 31–01–07, N.D.C.C., to negate other possible methods of consenting to, or waiving, testimony regarding alleged privileged communications.

For the foregoing reasons the petition for rehearing is hereby denied.

TEIGEN, C. J., and STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.